# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICOLE DUCHARME, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| MARY SALZER, CRESCENT CITY | ) |
| DEJA VU, L.L.C., DOES 1 - 10, ABC | ) |
| INSURANCE COMPANIES 1 - 10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Nicole Ducharme, by and through undersigned counsel, to file this Complaint against the Defendants. In support, she states the following:

### I.   INTRODUCTION

1.      This case is about a French Quarter restaurant that has a pattern of firing women when they terminate their pregnancies. In one week in 2017, two female employees of the Deja Vu Bar & Grill terminated their pregnancies, and both were fired within 24 hours of their procedure.

2.      One of those two women was Plaintiff Nicole Durcharme. She was hired at Deja Vu Bar & Grill ("Deja Vu") as a bartender in 2015. Her partner, Marshall, also worked at the bar.

3.      Nicole enjoyed her job and got along well with her manager, Mary Salzer.

4.      When Nicole got pregnant in 2017, Ms. Salzer was happy for Nicole and Marshall, and was supportive of the pregnancy and their relationship.

5.      However, Nicole realized soon into her pregnancy that she could not carry the pregnancy to term. So Nicole informed Ms. Salzer that she needed to get an abortion, and would therefore need two days off of work.

6.      Immediately, Ms. Salzer's treatment of Nicole changed from warm and supportive to cold and distant.

1

7.     On September 7, 2017, Nicole had her procedure. The same day, Ms. Salzer texted Nicole to inform her she was off the schedule.

8.     Confused, Nicole asked if she was fired. Ms. Salzer said she was indeed fired.

9.     Two days later, Marshall went into work and was told he was fired as well.

10.    The next week another bartender, referred to here as Jane Roe,[1] scheduled an abortion on September 12, 2017. She asked Ms. Salzer for that day off, and Ms. Salzer said "Fine."

11.    On September 10, 2017, Jane texted Ms. Salzer about the schedule. Ms. Salzer replied, "You are not on the schedule." Jane replied, "Okay, can you tell me why?" She received no response, and was never put on the schedule again.

12.    Defendants' decision to fire Nicole for having an abortion violates Title VII of the Civil Rights Act and the Louisiana Pregnancy Discrimination Act.

13.    Additionally, Defendants violated Nicole's rights under the Fair Labor Standards Act by (1) failing to make required disclosures about the tip credit they were taking; (2) requiring her to "tip out" employees who worked in the kitchen; and (3) requiring her to perform tasks she could not get tipped for – like cleaning, stocking, and ordering products – without paying minimum wage for those tasks.

14.    This civil action seeks compensatory, punitive, and other relief for Defendant's illegal treatment and termination of Nicole.

**II**.    **JURISDICTION AND VENUE**

**15.**    Plaintiff's claim arises under the Constitution and the laws of the United States. This Court has jurisdiction over Plaintiff's claims of federal rights violations, enforceable under Title VII of the Civil Rights Act as amended and the Fair Labor Standards Act, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's Louisiana state law claims in accordance with 28 U.S.C. § 1367.

---

[1] A pseudonym to protect her privacy. Her identity is known to Defendants.

16.     The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim occurred in Orleans Parish, situated in the Eastern District of Louisiana.

### III.     **THE PARTIES**

17.     Plaintiff **Nicole Ducharme** is of suitable age and capacity to file this suit. She is a resident of Orleans Parish in the Eastern District of Louisiana.

18.     Defendant **Mary Salzer** is, on information and belief, an owner and the general manager of the Deja Vu Bar and Grill. She fired Nicole Ducharme when Nicole had an abortion.

19.     Defendant **Crescent City Deja Vu, L.L.C.** is an active for-profit limited liability corporation in good standing in Louisiana. On information and belief, it does business as Deja Vu Bar and Grill in New Orleans., LA.

### IV.     **FACTS**

20.     Nicole Ducharme was hired as a bartender by Deja Vu Bar and Grill in 2015. Her partner, Marshall, was also employed by Deja Vu.

21.     When she was hired, Nicole was not advised of her minimum wage rights under the Fair Labor Standards Act ("FLSA"). She simply knew she would get paid $2.13 an hour, with tips on top of that.

22.     Defendants provided her with none of the required disclosures under 29 C.F.R. 531.59. The Déjà Vu employee manual makes no reference to the required disclosures.

23.     Nicole was required to share her tips with the untipped kitchen employees, which is prohibited by the FLSA.

24.     Deja Vu required Nicole to perform work which she could not get tipped for that was unrelated to her tipped occupation of bartending - including stocking and ordering product - but she was not paid the federal minimum wage of $7.25 during that time.

25.     Nicole enjoyed her job and worked there almost two years without incident. She got

along well with her manager, Mary Salzer.

26.     In 2017, Nicole got pregnant. She told Ms. Salzer, who was very supportive.

27.     Ms. Salzer she said she would do anything to help Nicole and Marshall. For example, Ms. Salzer gave them club tickets to see the Saints, so they could have a special date night together during Nicole's pregnancy.

28.     Unfortunately, Nicole got very sick and anemic during her pregnancy. A previous pregnancy had caused health problems, including gestational diabetes and hypertension. She was also forty years old, and had concerns with being pregnant for that reason. So she decided to get a medical abortion.

29.     Nicole informed Ms. Salzer she needed two days off to get an abortion. Ms. Salzer gave her a serious, disapproving look, and Nicole explained her health reasons for needing to terminate her pregnancy.

30.     Ms. Salzer agreed to give Nicole the days off, but her attitude towards Nicole changed.

31.     Since Ms. Salzer previously said she would do anything to help, Nicole asked for a ride home from the procedure. Ms. Salzer refused.

32.     Nicole's abortion was scheduled for September 7, 2017. On that day, Ms. Salzer texted Nicole to tell her she was off the schedule.

33.     Nicole asked Ms. Salzer if she was fired, and Ms. Salzer said yes.

34.     Two days later, on September 9, 2017, Marshall went into work and was told he was off the schedule as well.

35.     The next week, Jane Roe, another Deja Vu employee, also asked for time off to get an abortion. Her procedure was scheduled for September 12, 2017.

36.     On September 10, 2017, Jane texted Ms. Salzer to ask about the schedule for the upcoming week. She received no reply at first.

**37.**     Then, Ms. Salzer texted Jane that she was not on the schedule. Jane asked if Ms. Salzer could tell her why. She received no reply - and indeed was never informed why she was fired.

**38.**     She received a final paycheck postmarked September 15, 2017.

**39.**     Ms. Salzer's behavior did not go unnoticed. Another employee asked Ms. Salzer why Nicole, Marshall, and Jane were fired. Ms. Salzer claimed the three of them were drinking on the job. The employee knew that wasn't true and was so disgusted she quit on the spot - saying she needed a "healthier working environment."

**40.**     Ms. Salzer refused to give Nicole a pink slip - even when Nicole needed it to apply for food stamps.

**41.**     On November 30, 2017, Nicole timely filed a charge of discrimination with the Equal Employment Opportunity Commission.

**a.**     On February 8, 2018, Nicole received a Right to Sue Notice from the EEOC.

**V.     CLAIMS FOR RELIEF**

**Count One – Violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act**
**(All Defendants)**

42.     Plaintiff realleges and incorporates each and every foregoing paragraph.

43.     Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's medical conditions related to pregnancy. 42 U.S.C. § 2000e(k).

44.     Equal Employment Opportunity Commission Guidelines affirm that discrimination for having an abortion or considering having an abortion violates the Pregnancy Discrimination

Act.[2] EEOC Guidelines are entitled to a high degree of deference. *Griggs v. Duke Power,* 401 U.S.

424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971).

45.     The legislative history of the Pregnancy Discrimination Act indicates that abortion

was clearly contemplated by legislators as protected by the Act: "The PDA's legislative history

reveals that Congress intended the statute to require "employers to treat disabilities caused or

contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom as all other

temporary disabilities." *Moawad v. Rx Place*, No. 95 CV 5243 (NG), 1999 WL 342759, at *6

(E.D.N.Y. May 27, 1999), referencing H.R. No. 948, 95th Cong. 2, reprinted in 1978 U.S.Code

Cong. & Admin. News, 4749, 4750.

46.     Circuit courts that have considered the issue also confirm that firing an employee for

obtaining an abortion violates the Pregnancy Discrimination Act. *Turic v. Holland Hosp., Inc*., 85

F.3d 1211, 1213–14 (6th Cir. 1996), *Doe v. C.A.R.S. Prot. Plus, Inc*., 527 F.3d 358, 364 (3d Cir.),

order clarified, 543 F.3d 178 (3d Cir. 2008).

47.     The Pregnancy Discrimination Act applies to cases of discrimination that resulted in

termination. *Fairchild v. All Am. Check Cashing*, *Inc*., 815 F.3d 959, 967 (5th Cir. 2016). Close

timing between an employer's knowledge of the employee's pregnancy and the decision to

terminate the employee creates a material issue of fact as to whether the termination was based on

illegal discrimination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 594-95 (6th Cir. 2006). The 5th Circuit

has likewise acknowledged that temporal proximity between an employer's knowledge of the

employee's protected class and the subsequent termination can be evidence of pretext in the

termination decision. *Boyd v. State Farm Ins. Companies,* 158 F.3d 326, 330 (5th Cir.1998).

48.     Where an employer claims that an employee was fired for breaking a work-rule, and

the employee contends this was pretextual, the employee sets out a prima facie case of

---

[2] *See* the EEOC's Enforcement Guidelines on Pregnancy Discrimination and Related Issues,
*available at* https://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm.

discrimination when she shows that employees outside of the protected class were not fired for violating the same work-rule. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825, 36 L. Ed. 2d 668 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). The Fifth Circuit has affirmed that a Title VII plaintiff establishes a prima facie case by demonstrating "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly". *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995), quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879 (1980).

49.     Here, Nicole was pregnant, and then obtained an abortion.

50.     Ms. Salzer knew that Nicole was pregnant, and was supportive of her pregnancy. She also knew that Nicole got an abortion - and immediately fired her.

51.     Defendants' purported reason for firing Nicole was pretextual. They claim she was fired for violating a workplace rule by drinking.

52.     Other employees have drank at Deja Vu's bar while working, and were not terminated.

53.     By terminating Nicole on the basis of a medical condition related to her pregnancy, Defendants violated Nicole's rights under Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act.

### Count Two – Violation of Rights Under the Fair Labor Standards Act
### (Crescent City Deja Vu, L.L.C.)

54.     Plaintiff realleges and incorporates each and every foregoing paragraph.

55.     The Fair Labor Standards Act (FLSA) requires, among other things, employers to pay their employees minimum wage, and inform their employees of their rights. 29 U.S.C. 201, et seq.

56.     The FLSA requires employers pay their nonexempt employees the equivalent of the federal minimum wage. 29 U.S.C. §§ 206(a). For tipped employees - whose occupation customarily

and regularly gives them at least $30 a month in tips - employers make pay them less than the usual minimum wage of $7.25. 29 U.S.C. § 203(t); 29 C.F.R. §§ 531.56(a) and 531.58. Bartenders and servers are usually tipped employees; dishwashers and cooks generally are not. *See* WHD Fact Sheet #15: Tipped Employees Under the FLSA.

57.     The FLSA allows employers to take a "tip credit" for their tipped employees - essentially paying them less than the usual minimum wage - provided the employer meets certain base requirements. The largest tip credit allowable is $5.12 an hour, meaning employers may pay tipped employees $2.13 an hour if they meet the requisite standards. In addition to other requirements, the employer must inform the employee of the tip credit provisions *prior* to taking the tip credit, make up the difference if the employee's tips do not reach minimum wage, and allow the employee to keep their tips unless participating in a valid "tip pool." 29 U.S.C. § 203(m); 29 C.F.R. § 531.59.

58.     A valid tip pool is one where employees are informed ahead of time of the tip pool's existence, employees still make minimum wage when tips are added to their hourly wage, employees retain the tips they made, and only tipped employees participate in the tip pool. 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.54 and 531.59. However, this is only the case for a *mandatory* tip pool - if tipped employees choose to share their tips with non-tipped employees, that is acceptable under the FLSA. 29 C.F.R. § 531.54.

59.     Before taking a tip credit, employers must inform their employees of their rights under the FLSA, including:

- The amount of the cash wage that is to be paid to the tipped employee by the employer, which may not be less than $2.13 per hour;

- The additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer;

- The amount of the tip credit claimed may not exceed the value of the tips actually received by the employee; and

- All tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

29 CFR 531.59(b). If employers do not fully inform their employees of these rights, they owe their employees the *full* minimum wage. 29 CFR 531.50(3). Further, the "minimum wage poster" displayed by most employers is not sufficient to adequately inform employees of their rights. 29 CFR 531.59(b) and WHD Opinion Letter FLSA (January 21, 1997).

60.     Employers cannot take a tip credit for hours where employees do work that is unrelated to their tipped occupation. The employer is permitted to take the tip credit for "side work" that is related to the tipped occupation - for example, a server who spends some time setting and cleaning tables. 29 C.F.R. § 531.56(e); DOL Fact Sheet #15. However, if a tipped employee spends more than twenty percent of her time on "side work," employers cannot take a tip credit for that time. WHD FOH § 30d00(e); DOL Fact Sheet #15.

61.     Here, Nicole was never fully informed of her rights under the FLSA.

62.     She was not informed of the required disclosures of 29 CFR 531.59(b).

63.     Nicole was required by Deja Vu to share her tips with untipped employees.

64.     Finally, Nicole spent time doing tasks wholly unrelated to bartending, including stocking and ordering product for Deja Vu.

65.     Thus, Defendants violated Nicole's rights under the Fair Labor Standards Act.

**Count Three – Violation of the Louisiana Pregnancy Discrimination Act**
**(All Defendants)**

66.     Plaintiff realleges and incorporates each and every foregoing paragraph.

67.     Louisiana law forbids discrimination on the basis of pregnancy, childbirth, or a related medical condition. La. R.S. 23:342. Claiming a pregnant employee was fired for a reason that other non-pregnant employees were not fired for is discrimination based on an employee's pregnancy. *Suire v. LCS Corr. Servs, Inc.*, 930 So. 2d 221, 224 (La. App. 3 Cir. 2006).

68.     Nicole was pregnant, and then obtained an abortion.

69.     Nicole was fired the day she had the abortion, by the very manager she asked for time off from to get the abortion.

70.     Defendants knew that Nicole obtained an abortion, fired her for it, and fabricated a pretextual reason to fire her.

71.     Because of this, Defendants violated Nicole's state law rights to be free of discrimination on the basis of pregnancy.

**VI.     RELIEF REQUESTED**

72.     Plaintiff requests a trial by jury.

73.     Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

    a.   Declaratory relief;

    b.   Judgment against Defendants for Plaintiff's asserted causes of action;

    c.   Award of compensatory damages;

    d.   Award of special damages;

    e.   Award costs and attorney's fees pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b);

    f.   Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

NICOLE DUCHARME,
By and through her counsel,

/s/ William Most_____
Law Office of William Most, L.L.C.
William Most (La. Bar. No. 36914)
williammost@gmail.com
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023