IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICOLE DUCHARME, ) <br> ) <br> ) <br>     Plaintiff    ) <br> ) <br> v.    ) <br> ) <br> CRESCENT CITY DEJA VU, LLC,    ) <br> MARY SALZER,  DOES 1-10, and    ) <br> ABC INSURANCE COMPANIES 1-10,    ) <br> ) <br>     Defendants.    ) | Civil Action No. 18-cv-04484-JVM <br><br> Mag. Judge Janis van Meerveld |

**<u>DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL</u>**

In this motion, Plaintiff seeks production of over 4,500 hours of unedited, unreviewed video footage, all of which was taken weeks (if not months) after Plaintiff was fired, and none of which actually shows the Plaintiff.  Plaintiff's sole ground for seeking this massive amount of video is the hope that she might find some unidentified coworker who, on some unidentified date, violated the same CCDV rules as Plaintiff herself.  Plaintiff asks this Court to order production of a haystack, in the hopes that she can go through it and hopefully find a needle.  This is not a permitted use of discovery under Fed. R. Civ. P. 26, and the motion to compel should be denied.

**<u>BACKGROUND</u>**

In September 2017, Nicole Ducharme was fired from her job as a bartender at Crescent City Deja Vu, LLC ("CCDV").  She filed this lawsuit alleging that her termination was a violation of the federal Pregnancy Discrimination Act, and its Louisiana analogue.

Ms. Ducharme's case rests solely on a temporal coincidence.  In September 2017, she underwent an abortion.  That same week, she was fired.  Therefore, she reasons, she must

have been fired *because* she underwent an abortion.

Ms. Ducharme was actually fired for drinking on the job. Her drinking is not an allegation – it is an established fact. There is video of Ms. Ducharme mixing an alcoholic drink while behind the bar, and drinking it. Ms. Ducharme also admitted, at her deposition, that she drank while on the job. She also admitted that she knew drinking on the job was against the rules, but she did it anyway. (Deposition of N. Ducharme at 60:2-3 and 13-15).

Faced with these undeniable facts, Ms. Ducharme tried a different approach – she alleged that, while drinking was against the rules, "everybody did it." In response to this, CCDV produced, in its interrogatory responses, the names of several other employees who were also terminated, in whole or in part, for drinking on the job.[1] Defendant also produced separation notices of other employees who were terminated for drinking. Clearly, Ms. Ducharme was not singled out for termination while other employees were permitted to drink on the job without consequences.

Plaintiff has now pivoted to another argument – she should be permitted to review a hard drive containing over six months' worth of bar security tape. Perhaps somewhere, in those thousands of hours of footage, she might find evidence of "other employees [who] were drinking on the job, but not terminated." (Dkt. 37-1 at p. 1). This speculative and purely hypothetical suggestion does not justify the production, and attorney review, of over 4,500 hours of security footage.

## THE DISCOVERY AT ISSUE

At the outset of this litigation, Plaintiff's counsel served a document retention notice which, among other things, requested that CCDV retain copies of its security video. Plaintiff threatened a spoliation motion if the security footage was not retained. Like most companies,

---

[1] For some of these employees, CCDV cannot state with certainty that they had been drinking alcohol; only that they were impaired on the job and were under the influence of *some* substance.

CCDV does not keep security video indefinitely as a regular practice, and the video is automatically overwritten after a period of time.  Nevertheless, in response to Plaintiff's letter, CCDV, in good faith, agreed to retain security video for a time.  Defendant engaged its outside IT consultant to create a regular backup, which began on March 1, 2018.  On September 21, 2018, CCDV asked if it could stop the backup process (which was not free) and Plaintiff's counsel William Most agreed via email that there was "no need to keep recording."  From that date, CCDV reverted to its normal override practice, and the last video backup is dated September 14, 2018.[2]

In total, the backed up video stretches approximately 190 days.  Because CCDV operates 24-hours a day, there is  over 4,500 hours of video stored on the backup drive.[3]  The video takes up 3.6 terabytes of disk space.  If someone were to assigned to watch this video eight hours a day, five days a week, it would take over two years to watch it in its entirety.  The *vast* majority of this footage will show nothing more than the regular operations of a bar and restaurant, all of which will be completely irrelevant to Plaintiff's claim.

In Defendant's discovery responses, and again during the parties' meet and confer efforts, Defendant offered to produce the video for "particular shifts." (*See* Dkt. #37-6 at p. 5). Nevertheless, Plaintiff has refused to identify any particular shifts or other employees, and instead claims the right to review the entire video, without limitation.

Critically, the disputed video video contains *no footage whatsoever* of Plaintiff Nicole Ducharme, of her boyfriend Marshall Rudd (who was also terminated for drinking), or of the other unnamed CCDV employee who Plaintiff claims was terminated for having an abortion.

---

[2] The video for the week from April 26, 2018 through May 2, 2018 appears to be missing.

[3] Defendant has not personally double-checked the total number of hours contained in each file, so this figure is based on an extrapolation of the number of days' worth of video which have been retained.

Each of these individuals was terminated well before the March 1, 2018 – Sept. 14, 2018 period of this video.

## LEGAL STANDARD

Fed. R. Civ. P. 26, as recently amended, provides that parties may seek discovery of information "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The old standard, which allowed discovery that was "likely" to lead to the discovery of admissible evidence, no longer applies. Now, the party seeking discovery must show the specific relevance and proportionality of the request.

## ARGUMENT

**I.     THE REQUESTED DISCOVERY IS NOT PROPORTIONAL**

The requested discovery falls far short of the proportionality requirement of the revised Rule 26. To begin with, Plaintiff has not made any showing that this video is "relevant to any party's claim or defense." At best, Plaintiff claims that some unidentified portion of the video may show relevant evidence. Nor is this video critically important to the issues at stake in this action. This lawsuit should be about Nicole Ducharme, who is the only named plaintiff. She is attempting to make the lawsuit about everybody else – first by seeking the depositions of co-workers, and now by seeking thousands of hours of video (also showing other coworkers). Plaintiff is trying her best to shift the focus of this action away from her own upfront admission of drinking on the job, and the indisputable video evidence of her drinking. That is the evidence which is most important to resolving the issues in this action, contrary to

Plaintiff's claims otherwise.

Notably absent in Plaintiff's motion is any discussion of the costs which would be incurred by permitting this discovery. This video will not review itself. Should Plaintiff's counsel, and defense counsel, both be tasked with watching hundreds of hours of security camera video based on the possibility that there might be relevant evidence discovered, at some unknown point in the video? This would surely be contrary to the mandate, set forth in the very beginning of the Rules of Civil Procedure, of securing a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 26 similarly instructs Courts to take into account "whether the burden or expense of the proposed discovery outweighs its likely benefit" and whether it is justified by "the amount in controversy," and "the parties' resources." Even reviewing ten percent of the video here would take up 900 hours of combined attorney time, at a cost which would <u>far</u> exceed the maximum value of Ms. Ducharme's claims. Moreover, to the extent that Plaintiff claims that CCDV allows employees to drink on the job without sanction, Defendant has provided her with evidence relevant to that claim, in the form of (1) the identifies of individuals fired, in whole or in part, for drinking, and (2) the relevant separation notices. Plaintiff has also noticed a deposition of General Manager Mary Salzer, and a Rule 30(b)(6) deposition of CCDV itself. She may ask questions during those depositions. These are all far more reasonable and cost-efficient methods of obtaining the information which Plaintiff claims she needs.

## II.    THE CASELAW DOES NOT SUPPORT PLAINTIFF'S POSITION

Plaintiff's moving brief does not cite any cases holding that a Title VII plaintiff is entitled to production of months' worth of security video in the hopes that, somewhere in that video, the Plaintiff might find a comparator who committed a similar infraction. Nor has Defendant discovered any such cases, although there certainly are cases ordering the

disclosure of the video of *specific* incidents which are the subject of certain litigations. Defendant has produced to Plaintiff the specific video which shows Ms. Ducharme drinking on the job, and which CCDV relied on in terminating Plaintiff's employment.

Indeed, Defendant has discovered only one case in which any party made a similarly broad demand for video, *Adams v. Epps*, 2008 U.S. Dist. LEXIS 114706 (S.D. Miss. Dec. 16, 2008). In *Adams,* a *pro se* prisoner claimant filed a motion to compel a "security tape video for [his cell block] from September 2007 to present." In a terse order, the Court simply held that "[i]n light of the ample discovery already granted to date, the court does not find that additional discovery is justified." *Id.* at *3.

Plaintiff's memorandum instead cites to several cases which do not involve requests for production of video evidence. Plaintiff argues that she is entitled to discovery regarding comparator employees. This is true, to an extent, but the right to comparator information is not unlimited. In the first instance, Plaintiff must first define who the alleged comparators are. In Title VII cases, it is the Plaintiff's burden to identify the comparator who allegedly received superior treatment under "nearly identical circumstances." *Johnson v. JP Morgan Chase Bank*, 469 F. App'x 345, 348 (5th Cir. 2012) (the Fifth Circuit "require[s] the plaintiff to identify a comparator in making a prima facie case of racial discrimination," citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 257 (5th Cir. 2009)).

In accordance with this principle, CCDV offered to produce the videos of "particular comparators" or "particular shifts" identified by Plaintiff. (Dkt. #37-6, p. 5). Plaintiff has not done so. The meet and confer process is a two way street – Plaintiff cannot simply demand that the Defendant provide all discovery requested. The Plaintiff also has a responsibility to, in good faith, work to limit her request to the relevant evidence. That is absent here.

None of the cases cited by Plaintiff's brief do involve security videos or ESI, and they

are not on point. In *George v. Entergy Servs.*, 2010 U.S. Dist. LEXIS 108207 (E.D. La. Sept. 17, 2010), the Plaintiff alleged that she was denied a certain job, despite having superior credentials to other applicants. The court allowed Plaintiff to review the applications of the other individuals who applied for the same job posting that Plaintiff did, so that she could compare. *Id.* at *5 This decision also recognizes that there are limits to comparator evidence – Plaintiff was not permitted the interview notes from the employees who interviewed for that same job, because the Plaintiff herself did not interview for that job posting. *Id.* at *6.

Plaintiff also cites *Beasley v. First Am. Real Estate Info. Servs.*, 2005 U.S. Dist. LEXIS 34030 (N.D. Tex. April 27, 2005), which in no way supports Plaintiff's motion. The *Beasley* plaintiff did not seek "comparator" evidence at all; he requested the personnel files of the HR employees and supervisors who participated in his termination. *Id.* at *9-10. The court ordered the Defendant to produce tightly limited versions of those files, only to the extent that they were "directly pertaining to plaintiff's termination or other complaints of race discrimination or retaliation." *Id.* at *11. The Court was careful to note that "plaintiff is not entitled to rummage through the personnel files of these employees in hopes of discovering information that might possibly be relevant to his claim." *Id.* That is precisely what Ms. Ducharme seeks to do in this case – "rummage" through thousands of hours of video in the hopes of discovering something, anything, that might salvage her case. Nothing in *Beasley* supports the request at issue here.

Plaintiff also cites, briefly, *Reine v. Honeywell Int'l, Inc.*, 2008 U.S. Dist. LEXIS 34112 (M.D. La. April 25, 2008). In *Reine*, the Plaintiff sought the personnel file and evaluations of one specifically identified co-worker – Johnny Gautreaux – which the Court ordered the Defendant to produce. *Id.* at *12-13. That is a far more limited request than has been made here, and in no way justifies the production of 4,500 hours of video footage.

Far more closely on point is the decision of *Odeh v. City of Baton Rouge,* 2016 U.S. Dist. LEXIS 41079 (M.D. La. March 29, 2016). In that case, the Plaintiff served a request for his entire work email inbox, during the whole term of his employment: "a digital copy of plaintiff's Email Inbox from 2001 to present in unrestricted and searchable 'PST' file format." *Id.* at *8. The Court held that this broad demand was inappropriate, as the "Plaintiff did not limit the scope of this request to email messages he received from a certain person, . . . during a certain time, or . . . that include certain search terms." *Id.* at *9. Instead, the Plaintiff was directed to "specifically request the type of information sought" with "reasonable particularity." *Id.*

*Odeh* is instructive because that case, like this one, involved an overbroad request for electronically stored information (ESI). Here, Ms. Ducharme claims that it will not be burdensome for Defendant to produce the video files because they are already stored on a hard drive. This misses the point. In *Odeh*, it would not have been "burdensome," from a *technological* standpoint, for the Defendant to simply produce the Plaintiff's entire email inbox. If this were the only requirement, ESI production would be unlimited, as it is always simple to copy electronic files from one computer to another. Yet no court would permit a document request that asked for "all emails of the Plaintiff and her coworkers," with the intention that Plaintiff's counsel would simply go through them to try to find relevant information. That is, in essence, what Ms. Ducharme requests in this case.

### III. THE DEMAND FOR SANCTIONS IS INAPPROPRIATE

Finally, even if the motion is granted, Plaintiff's request for sanctions under Rule 37 should be denied. Sanctions are not appropriate if a party's actions are "substantially justified," which the Supreme Court has defined as a "genuine dispute" in which "reasonable people could differ" as to the appropriateness of the contested action. *Pierce v. Underwood*,

487 U.S. 552, 565 (1988) (collecting cases). This motion does not present a situation where a party has already been ordered to produce evidence, and has failed to do so. Nor is there clear, binding precedent stating that such video must be produced. Given the broad and unprecedented nature of Plaintiff's request, reasonable people could differ as to the appropriateness of the demand, and sanctions are not warranted.

## CONCLUSION

Plaintiff's motion risks setting a dangerous precedent. Many businesses use security cameras. Under Plaintiff's theory, there is no reasonable limiting principle to the production of security video – any employment plaintiff would be entitled to secure and review months' worth of video, even if it was taken after their termination, based on nothing more than a hunch that there might be some useful evidence, somewhere in the video, which might support the plaintiff's claim, or which might show an employee outside the Plaintiff's protected class receiving more favorable treatment. This would drastically change the scope, and increase the expense, of normally permissible discovery in Title VII cases.

Plaintiff's demand for production of all video evidence is overbroad, irrelevant, and not proportional to the needs of the case. The motion should be denied.

Respectfully Submitted,

*/s Charles J. Stiegler*
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com