IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICOLE DUCHARME, ) <br> ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> CRESCENT CITY DEJA VU, LLC, ) <br> MARY SALZER, DOES 1-10, and ) <br> ABC INSURANCE COMPANIES 1-10, ) <br> ) <br> Defendants. ) | Civil Action No. 18-cv-04484-JVM <br><br> Mag. Judge Janis van Meerveld |

**DEFENDANTS' STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Crescent City Deja Vu, LLC ("CCDV") and Mary Salzer hereby serve the following statement of uncontested facts in support of their Motion for Summary Judgment.

1. Ducharme was hired by CCDV in March 2016. (*See* Ducharme Employee Earnings Report, p. 2).

2. Ducharme first worked as a server. In that position, she was paid $2.50 per hour in cash wages, plus tips. (*See* Ducharme Employee Earnings Report, p. 2).

3. Ducharme was hired by Mary Salzer. At the time of hiring, Salzer explained to Ducharme her rate and method of pay (i.e., hourly plus tips). (Salzer Depo at 23:17-25, 110:1-14).

4. Salzer also informed Ducharme where the CCDV employee handbook was located. (Salzer Depo at 23:17-25, 110:1-14).

5. Ducharme always received sufficient tips to make her total earnings $7.25 per hour or more. (*See* Ducharme Employee Earnings Report).

6. After working as a server for a time, Ducharme asked Salzer to move to a bartender position, because it was "more fun." (Ducharme Depo. At 30:15-19).

7. As a bartender, Ducharme was paid "shift pay" – at first, $50 for an 8-hour shift, and later $60 for an 8-hour shift. (Ducharme Employee Earnings Report at p. 5-6).

8. Ducharme alleges that she shared her tips with CCDV kitchen staff, but has no records of when she shared tips with the kitchen staff, or how much she gave them. Ducharme Depo. at 41:1-5.

9. Ducharme did not share tips with kitchen staff every day, and estimates that she did so "[m]aybe twice a week," depending on "how busy it was, how good of a job they did." (Ducharme Depo. at 38:18-24.)

10. Salzer never instructed Ducharme to tip out. (Ducharme Depo. at 38:1-5.)

11. Ducharme claims that, when she first began working, Salzer told her that it was "customary" to tip out the kitchen staff. (Ducharme Depo. at 49:13). Other than this one comment, Ducharme does not allege that Salzer ever said anything to her about tipping out the kitchen.

12. Plaintiff alleges that she sometimes personally shared her tips with kitchen staff, but admitted that it was wholly up to her to decide whether to give money to the kitchen staff, and, if so, how much to give. (Ducharme Depo., p. 36:11-37:3).

13. Ducharme chose whether or not to share tips with the kitchen staff based on how much money she made in a shift, and she averaged sharing tips with them twice a week. (Ducharme Depo., p. 38:14-24).

14. If Ducharme felt that she had earned enough in tips to share, she would "[j]ust go back there and hand them cash." (Ducharme Depo. At 37:22).

15. CCDV employees Rachael Rettinger, Eric Clark, and John Robarge all assert that there is no mandatory tip pool at CCDV, and that any payments to the kitchen are wholly voluntary. (E.

Clark Decl., ¶ 7-11; R. Rettinger Decl., ¶ 8-13; Robarge Decl., ¶ 7-12.)

16. Clark, who has worked at CCDV for years, states that "I have never paid any portion of my tips to cooks, dishwashers, or any other back of the house workers while at Crescent City Deja Vu." (E. Clark Decl., ¶ 8).

17. In September 2017, Ducharme told Salzer that she had become pregnant, and that she was planning on having an abortion. Salzer did not have any reaction. (Ducharme Depo. At 77:13-23).

18. At no point during Ducharme's employment did Salzer say anything that led Ducharme to believe that Salzer was opposed to abortion, or that Salzer was religious. (Ducharme Depo. At 80:19-81:13).

19. Ducharme told Salzer that she would need two days off for the abortion. Salzer agreed, and Ducharme took those days off. Salzer Decl., ¶ 19.

20. While Ducharme was taking her days off, server John Robarge came to Salzer and told her that, after Salzer had been leaving for the day, Robarge saw Ducharme drinking. (Salzer Decl., ¶ 20).

21. Salzer had previously given Ducharme a verbal warning about drinking on the job. (Salzer Depo., 31:13-32:21).

22. There is a sign at CCDV which states: THERE IS NO DRINKING ALCOHOL ON THE JOB. THERE ARE NO EXCEPTIONS TO THIS COMPANY RULE. ANYONE WHO DRINKS OR FACILITATES DRINKING WILL BE FIRED. (*See* No Drinking Alcohol Poster; *see also* M. Salzer Decl., ¶ 15).

23. The CCDV handbook forbids drinking during an employee's shift. (CCDV Handbook at p. 18).

24. After Robarge told Salzer about Ducharme's drinking, Salzer looked at security camera footage

to see whether she could confirm what he said. (Salzer Decl., ¶ 22).

25. After five to ten minutes of watching video, Salzer saw Ducharme pour herself a glass of alcohol, and take a drink. (Salzer Depo. At 43:3-12; *see also* video produced to Clerk's office).

26. Salzer decided to terminate Plaintiff based on this clear violation of company policy. (*See* Ducharme Separation Notice).

27. Ducharme admitted that she knew drinking on the job was against the rules, but she did it anyway. (Ducharme Depo. at 60:2-3 and 13-15), *see also* Robarge Decl., ¶ 16-17 (asserting that he saw Ducharme drinking on the clock).

28. Salzer then looked at video of Ducharme's boyfriend, Marshall Rudd, and quickly found a video of him drinking as well. (Salzer Depo. At 68:4-15). He was also terminated for drinking on the job. (*Id.*, *see also* video produced to Clerk's office).

29. CCDV has terminated other employees who were inebriated or drank on the job. (*See* Co-worker Separation Notices).

30. Several other CCDV employees have been terminated for drinking (or otherwise being impaired) on the job. (Salzer Decl., ¶ 45 and Employee Separation Notices).

31. Salzer has no strong opinion on abortion, and does not disapprove of it. (Salzer Depo. At 106:7-108:10; Salzer Decl. At ¶ 28-30). Salzer views it as none of her business. *Id.*

32. Salzer never said anything to Ducharme that suggested that she disapproved of abortion, and Ducharme had no reason to believe Salzer was politically or religiously minded. (Ducharme Depo. At 80:19-81:13).

33. When Ducharme informed Salzer that she was planning on undergoing an abortion, Salzer did not attempt to talk her out of it, and did not say that she disapproved of the decision. (Ducharme Depo. At 77:13-23).

34. Although Plaintiff asserts that, after she told Salzer she was pregnant and planning on undergoing an abortion, Salzer's "attitude changed" and she "began treating me crappily," Plaintiff was not able to provide any specific examples to support this claim. *Id.* (Ducharme Depo. At 77:17-20; 78:4-6).

35. Semilla Anderson did not tell Salzer that she was pregnant. (Anderson Depo. At 34:3-5; 35:17-19). Anderson admits that she was not "showing" at the time. (Anderson Depo. At 33:6-8).

36. Ducharme did not tell Salzer that Anderson was pregnant. (Ducharme Depo. At 84:4-8).

37. Salzer had no idea that Anderson was pregnant. (Salzer Depo. 76:21-77:7; Salzer Decl., ¶ 31-33).

38. CCDV's handbook states: "In accordance with Federal Minimum Wage Law, employees are paid overtime when they work more than 40 hours in one week. Hourly employees are paid at one and one-half times their basic straight time rate for all overtime hours worked. Tip credit will be factored into the hourly rate for tipped employees." (CCDV Handbook at p. 9).

39. CCDV also posts copies of the required Labor Law posters at three separate locations at the bar – one in the area between the dining area and the kitchen, where employees clock in and place food orders; the second on the stairwell leading up to the office and storage areas; and the third in the small hallway near the office and the employee bathroom. (Salzer Decl., ¶ 41-43).

40. Each of these posters is provided by Paychex, CCDV's payroll company, which regular provides updated versions. *Id.* at ¶ 40. When a new version of the poster is mailed to CCDV, Salzer posts it. *Id.*

41. These posters contain information about a variety of labor laws, including a section entitled "Employee Rights Under the Fair Labor Standards Act" which, among other things, informs employees of the minimum wage and the tip credit. This is the official poster promulgated by

the Wage and Hour Division of the Department of Labor, WH-1088 (last rev'd 07/16). (*See* Labor Law Posters).

42. Plaintiff admitted seeing these posters. (Ducharme Depo. At 71:12-14).

43. Plaintiff never ordered any product while at CCDV. (Ducharme Depo., 44:21-23).

44. A few times a week, Ducharme would pay for beer or liquor deliveries with CCDV checks that Salzer filled out and left at the bar, but only when Salzer was not there. (Ducharme Depo. At 43:9-44:1).

45. Ducharme would stock the beer cooler and liquor shelf as the product was used up. When asked how long it took to stock, Plaintiff answered, "not long." (Ducharme Depo. At 44:9-12).

46. Ducharme sometimes paid out video poker winnings. (Ducharme Depo. At 44:16-20).

        Respectfully Submitted,

        */s Charles J. Stiegler*
        Charles J. Stiegler, #33456 (TA)
        STIEGLER LAW FIRM LLC
        318 Harrison Ave., Suite 104
        New Orleans, La. 70124
        (504) 267-0777 (telephone)
        (504) 513-3084 (fax)
        Charles@StieglerLawFirm.com