IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NICOLE DUCHARME, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 18-cv-04484-JVM |
| | ) | |
| v. | ) | |
| | ) | Mag. Judge Janis van Meerveld |
| CRESCENT CITY DEJA VU, LLC, | ) | |
| ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Crescent City Deja Vu, LLC ("CCDV") and Mary Salzer hereby submit this reply memorandum in support of their Motion for Summary Judgment (Dkt. #61).

**I.    The Pregnancy Discrimination Claims Should Be Dismissed**

    **A.    Plaintiff Has Not Established that CCDV Had the Minimum Number of Employees**

As set forth in Defendant's Motion for Judgment on the Pleadings, Title VII and the LEDL contain statutory minimums regarding the number of employees over a 20-week period. *See* 42 U.S.C. § 2000e(b) and La. R.S. § 23:341(A). Plaintiff has no admissible evidence from which a reasonable finder of fact could hold that CCDV met these minimum employee requirements .

Plaintiff first relies on Ducharme's conclusory statement that CCDV "has always had more than twenty-five employees within Louisiana for each working day in each of twenty or more calendar weeks." (Dkt. 68-2, ¶ 6). But a declaration opposing summary judgment must be based on first hand, personal knowledge, and show that the declarant is competent to testify accordingly. Fed. R. Civ. P. 56(c)(4); *see Waggoner v. Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) (disregarding portions of plaintiff's affidavit which were not based on personal knowledge). Ducharme does not explain *how* she could possibly know this, other than a generic statement that it is "based on my observation." (*Id.*, ¶ 7). A "general averment of personal knowledge" does not satisfy Rule 56(c)(4), which requires a

declaration to "include enough factual support to show that the affiant possesses that knowledge." *Scogin v. Tex. Eagle Fore Shale Magazine*, 2015 U.S. Dist. LEXIS 188214, *11 (S.D. Tex. Dec. 23, 2015) (citing *XL Spec. Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728, 748 (E.D. La. 2014)).

Here, Ducharme offers no evidence from which the Court could conclude that she possesses firsthand knowledge of these facts. Ducharme was not responsible for human resources or payroll functions; she did not review CCDV's books or perform accounting work.[1] She was a server, and a bartender. She has no personal knowledge of how many employees were actually employed at any given time, much less over the requisite number of calendar weeks. In *Scogin*, *supra*, the question was whether the Plaintiff was competent to testify that the defendant met the $500,000 gross sales limit under the FLSA.[2] The Court held that she was not, as her job title of writer/editor "does not adequately support the inference that Scogin has personal knowledge of Defendants' annual gross sales." *Id.* at *12. The blanket statement that she had "personal knowledge" was not sufficient, in the absence of actual facts establishing her knowledge. *Id.; see also Forgan v. Howard Cty.*, 2005 U.S. Dist. LEXIS 15636, * 35 (N.D. Tex. July 29, 2005) (same). This principle applies equally here.

As to the schedule, it does not prove what Plaintiff claims it proves. Although the schedule does include 26 names, one – Eric Smith – is an outside IT consultant who CCDV calls when it has computer problems.[3] He is not an employee. Nor would this schedule be relevant for any time period other than the week of August 28, 2017, and cannot satisfy the "each working day in each of twenty or more calendar weeks" requirement of the statute. *See Brooks v. Popeye's Inc.*, 11-1086 (La. App. 3 Cir. 3/14/2012) 1010 So. 3d 59, 63, writ denied at 99 So. 3d 676 (La. 11/02/12)(list of 176 employees

---

[1] Although Ducharme claims she was a "manager on duty," the only supposedly "managerial" tasks she identifies are: ensuring that servers turn in their money at the end of the shift, counting the poker drawer, and making poker payouts. (Ducharme Decl. At ¶ 8).
[2] 29 U.S.C. § 203(s)(1)(A). Like Title VII's minimum employee requirement, this is an element of the Plaintiff's claim and her burden to prove. *Scogin, supra,* at *10.
[3] *See* Decl. of J. Eric Smith, attached in reply to Defendant's Motion for Judgment on the Pleadings.

over a nine-month period does not satisfy statutory language).  As a final note, Plaintiff complains that Defendants have not affirmatively *disproven* the number of employees, but it is not Defendants' burden to do so when Plaintiff has not made her initial showing.  It is Plaintiffs' burden to plead every element of her claim, then to conduct the necessary discovery to obtain relevant evidence.  She has not done so.

### B.     Plaintiff Has Not Established That Her Termination Was Pretextual[4]

Plaintiff does not dispute that CCDV's explanation that she was drinking on the job is a legitimate, non-discriminatory reason for termination.  The question is therefore whether Plaintiff has proffered "substantial evidence" of pretext.[5]  Although Plaintiff purports to identify seven facts showing pretext, they that boil down to either a *subjective* belief that CCDV must have acted wrongly, or the assertion that the termination simply could not have been a "coincidence."  This is not enough to meet Plaintiff's substantial burden, in light of the undisputed evidence of Ducharme's rulebreaking .

1.     <u>Temporal Proximity</u>.  Plaintiff's first argument is based on temporal proximity. Plaintiff claims the temporal proximity "that alone is enough to raise an issue of pretext," but this bald assertion is directly contrary to controlling Fifth Circuit precedent, which holds that temporal proximity is necessary, but not sufficient, to show pretext.[6]  Plaintiff does not even address this binding precedent, which is cited in Defendants' moving brief, but instead cites *Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989), a thirty-year old out of circuit decision in which it was not even clear whether the action plaintiff was terminated for – removing his headphones – was a violation of company rules.  *Id.* at 709.

---

[4]Ducharme has not satisfied the initial, *prima facie* stage, as set forth in Defendants' moving papers and the Motion for Judgment on the Pleadings.  (*See* Dkt. #61-2 at p. 5-6; #62-1 at p. 3-6).  Space limitations preclude Defendants from re-addressing this claim in this reply.
[5]Plaintiff claims that the "substantial evidence" burden only applies at trial, but this is simply not so.  The Fifth Circuit has repeatedly applied the "substantial evidence" standard in ruling on motions for summary judgment.  *See Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001); *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 320 (5th Cir. 2014); *Garcia v. Penske Logistics, LLC*, 631 F. App'x 204, 212 (5th Cir. 2015); *Outley v. Luke & Assocs.*, 840 F.3d 212, 216 (5th Cir. 2016).
[6]"[T]emporal proximity between the plaintiff disclosing her pregnancy and her termination cannot alone prove pretext." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016) (collecting cases).

Plaintiff also seeks to rely on the termination of Semilla Anderson as evidence of temporal proximity. Plaintiff completely ignores the undisputed facts showing that Salzer had no knowledge of Anderson's pregnancy, including: (1) Ducharme's admission that she did not tell Salzer that Anderson was pregnant;[7] (2) Anderson's admission that she did not tell Salzer that she was pregnant;[8] (3) Anderson's admission that her pregnancy was not showing;[9] and (4) Salzer's testimony that she did not know Anderson was pregnant.[10] There is therefore no evidence from which any jury could conclude that Salzer knew that Anderson was pregnant or, *a fortiari*, planning on undergoing an abortion. Ducharme's reliance on Anderson's termination simply holds no water.

    2.    <u>Whether the Video Was Taken One Week or One Month Before the Termination.</u>

Plaintiff then points to Salzer's uncertainty regarding the date of the video showing Ducharme drinking on the job. According to Plaintiff, Salzer first testified that she went back "not more than a week" to find the video, then later changed her mind and said it was a month. Plaintiff calls this a "lie." Reading the deposition testimony in full shows that this is a blatant mischaracterization:

> Q. You didn't go like weeks or a month back, did you?
> A. I didn't have to.
> Q. So it was within a couple of days in the past that you found this video?
> MR. STIEGLER: Object to form.
> BY MR. MOST:
> Q. Okay. It wasn't weeks or a month, right?
> A. I really don't remember.
> Q. You just testified you didn't have to go back weeks or a month.
> A. No. I just went back a chunk.[11] It wasn't months. It could have been a week.

(Salzer Depo. At 42: 11-24).

---

[7]Ducharme Depo. At 84:4-8.
[8]Anderson Depo. At 34:3-5; 35:17-19.
[9]Anderson Depo. At 33:6-8.
[10]Salzer Depo. 76:21-77:7; Salzer Decl., ¶ 31-33.
[11]By "chunk," Ms. Salzer explained that she selected the timeline bar at the bottom of the video, and "just went [and] clicked on one." (Salzer Depo. At 133:13-20). Salzer further testified that the drinking occurred on the very first shift which she watched, and that she only had to watch "five or ten minutes" of video to catch Ducharme drinking. *Id.* at 43:3-9.

Salzer answered this series of leading questions as best she could – nothing she said could possibly constitute a "lie."  Plaintiff places quotation marks around the phrase "not more than a week," but this actually quotes part of the aggressive, leading questioning – not Salzer's response.  It is highly disingenuous for Plaintiff to quote her counsel's own statement as if it were the deponent's.  And even if there is any discrepancy, it is completely immaterial to this motion.  It does not matter whether the video found occurred a month, a week, or a day earlier.  What matters is that *it occurred*, and that Ducharme's blatant violation of the anti-drinking rule was clearly recorded on the video screen, which led Salzer to fire her.  The material fact is the violation itself, not the precise date of the video.

3. <u>Whether Ducharme Should Have Received More Warnings.</u>  Ducharme then argues that she should have received more warnings before being fired, as one other employee received warnings about drinking.  (Ironically, this other employee was Ducharme's own boyfriend, Marshall Rudd).  Rudd worked the "graveyard" shift, from 1 am to 9 am (*See* Dkt. #68-3, Employee Schedule).  Salzer, of course, did not arrive at the bar until regular working hours.  Salzer testified that, because of this, she "never caught him [drinking] in the flesh" and explained that "there is a difference between actually seeing it or not actually seeing it, just suspecting it."  (Salzer Depo. At 88:3-9).  Once she did find evidence of Rudd drinking "in the flesh" – that is, on video – she fired him.  In short, when Salzer suspected Rudd was drinking, she warned him.  When she saw proof of drinking on the video, she fired him – just as she fired Ducharme, when she saw her drinking on the video.  This is a perfectly rational distinction, and Plaintiff has adduced no evidence to show that it is false.

4. <u>Whether Other Employees Were More Impaired Than Ducharme</u>.  Plaintiff then complains that other employees who were fired were "more impaired" than she was.  So what?  The bar has a rule against drinking while on shift.  Whether that is one drink or five, it is against the rules and a known fireable offense.  Plaintiff again quotes from her own counsel's leading question that

Ducharme took "one sip" of the drink, and treats it as if it were Salzer's own testimony. (Salzer Depo., 67:11-13). It was only Plaintiff's attorney, and never Ms. Salzer, who referred to Ducharme's drinking as a "sip." Perhaps Plaintiff's counsel believes one "sip" does not justify her firing, but "[e]mployment discrimination laws were not intended to be vehicles for judicial second guessing of employment decisions, nor were they intended to transform the courts into personnel managers." *Kimble v. Ga. Pac. Corp.*, 245 F. Supp. 2d 862, 864-865 (M.D. La. 2002).

     5.     <u>The Alleged Other Employees Who Were Not Fired.</u>  Plaintiff then claims that other employees drank on the job and were not fired, quoting the declarations of Ducharme and Kelsy O'Morrow. Although Plaintiff does not use the word, she is claiming that other comparators were not fired. But neither Ducharme nor O'Morrow actually identifies any other employees! Both refer vaguely to "[o]ther employees." (Ducharme Decl., ¶¶ 4-5; O'Morrow Decl., ¶ 6). They do not say who else was supposedly drinking on the job, when, or whether Salzer *knew* about the drinking. If drinking on the job was as common as Ducharme claims, she could easily identify other employees. She cannot. (In fact, she told the Court she would have to sift through <u>thousands</u> of hours of video to hopefully find evidence of another employee drinking on the clock drinking. (*See* Dkt. #37)).

     Ducharme also claims she saw other employees using heroin in the employee bathroom, and that she told Salzer about this. (Ducharme Depo. At 51:5-52:6). Tellingly, one of the three individuals who Ducharme claims was taking heroin, Brandon Mooney, was in fact fired for being "not in condition to work" - in fact, he was fired months before Ducharme;s termination. (Dkt. #61-15, Brandon Mooney Separation Notice). As Salzer stated in her deposition, there is a difference between *suspecting* that someone is on substances and actually seeing evidence. (Salzer Depo. At 88:3-9). Salzer's only notification of the other alleged drug use was Ducharme's secondhand report.[12]

---

[12]Tellingly, Plaintiff's counsel did not ask a single question about the alleged heroin use at Salzer's deposition, likely because he would not have liked the answers he received.

Ducharme was drinking in the bar, in full view of the video cameras, not in private, in a bathroom. A valid comparator must have been in "nearly identical circumstances" to show evidence of employment discrimination. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015); *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016) ("Such circumstances exist when the employees being compared held the same job or responsibilities, shared the same supervisor ... and have essentially comparable violation histories.") A secondhand report alleging that other employees have taken forbidden substances, in secret, is not "nearly identical" to a clear, indisputable video of an employee taking forbidden substances while on the clock. This is especially true where one of the individuals identified by Plaintiff *was actually fired* for being impaired at work. Plaintiff had the burden of identifying "nearly identical" comparators who were not fired.[13] She has not done so.

6. <u>Ms. Salzer's Alleged Reaction.</u> Ducharme then claims that Salzer treated her "crappily" or "indifferently" after learning of the planned abortion. But as explained in Defendant's moving brief, Ducharme does not identify anything concrete or objective that Salzer ever did or said to make her feel this way. Instead, we have Ducharme's vague and subjective opinion. It hardly requires citation to state that a plaintiff's asserted subjective belief of discrimination is not grounds for a Title VII claim.[14]

7. <u>O'Morrow's Declaration</u>. Ducharme further relies on the declaration of Kelsy O'Morrow, who states that she, personally, never saw Ducharme drinking on the clock, and that she doesn't believe Ducharme or Anderson was fired for drinking on the job.[15] She does not explain why she believes this, or what evidence she has to support it. This declaration suffers the same flaws as

---

[13]*Andrews v. La. State Univ.*, 2018 U.S. Dist. LEXIS 151918, *11 (M.D. La. Sep. 6, 2018); *Peuler v. Jewell*, 2016 U.S. Dist. LEXIS 141363, *21 (E.D. La. Oct. 11, 2016). *See Clark v. Railcrew Xpress, LLC*, 2018 U.S. Dist. LEXIS 181338, *22 and fn. 104 (M.D. La. Oct. 22, 2018) (it is not Defendant's burden to identify comparators who *were* fired, but Plaintiff's to identify those who were not fired).
[14]*Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir. 1997); *Cook v. Miss. Dep't of Human Servs.*, 108 F.App'x 852, 856 (5th Cir. 2004); *Warner v. Dallas*, 540 F.App'x 257, 262 (5th Cir. 2013).
[15]To be clear, Anderson was *not* fired for drinking on the job, and CCDV has never claimed that she was. *See* Salzer Decl., ¶ 34-36 (explaining the reasons for Anderson's firing). O'Morrow does not know what she is talking about.

Ducharme's own declaration, as it is based on her subjective belief of whether Ducharme deserved to be fired. "[T]he subjective belief of a fellow employee...suffers from the same defects as the plaintiff's subjective belief." *Pippins v. Tangipahoa Parish Sch. Bd.,* 2004 U.S. Dist. LEXIS 13195, *32 (E.D. La. July 12, 2004) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991)).

Strangely, Plaintiff refers to O'Morrow's declaration as "direct evidence" of pretext. It is surely not. Direct evidence is evidence which "can be interpreted as an acknowledgment of defendant's discriminatory intent."[16] It "includes any statement or written document showing a discriminatory motive on its face."[17] O'Morrow's declaration does not even begin to approach direct evidence – by way of example, in *Jones v. Overnite Transp. Co.*, 212 F. App'x 268 (5th Cir. 2006), the Fifth Circuit held that there was no direct evidence where a supervisor allegedly stated that he wanted to "get rid of all the blacks" and "fire all the niggers." *Id.* at 273. There are no remotely similar statements here.

Indeed, this case is remarkable for its *lack* of any evidence regarding discriminatory intent. None of the employees who have submitted declarations or depositions claim that Salzer ever made even a single stray remark regarding abortion, or that she ever gave any hint that she had political or religious opinions on the matter. There is simply no evidence of any allegedly unlawful motive, and no evidence which would justify submitting this claim to a jury.

## II. Summary Judgment is Appropriate As to the FLSA Claim

### A. The Tip Pool Was Not Mandatory

As explained in Defendant's moving brief, Ducharme had full personal discretion whether to share tips with back of house workers; when to share tips with them; and how much to give them if she did decide to share. (Dkt. #61-2 at p. 12-14). It is further undisputed that Ducharme decided to share tips on less than half her shifts, and suffered no consequences if she chose not to do so. *Id.* Plaintiff

---

[16]*Bass v. Lifecare Holdings, Inc.*, 2000 U.S. Dist. LEXIS 5051, *21 (E.D. La. Apr. 12, 2000) (quoting *Kormoczy v. U.S. Dep't of Housing & Urban Dev.*, 53 F.3d 821, 824 (7th Cir. 1995)).
[17] *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001).

completely ignores all this evidence, even though it comes Ducharme's own testimony.

If something is mandatory, you must do it. If something is voluntary, you have a choice. It is quite clear that Ducharme did not believe, during her employment, that sharing tips was mandatory at CCDV, and that she had a choice whether to do so.[18] The tip pool claims should be dismissed.

### B. The Tip Credit Notification Claim Should Be Dismissed

Plaintiff also brings a claim for failure to notify of the tip credit under 29 U.S.C. § 203(m)(2). The reasons why this claim should be dismissed are set forth, in detail, both in the moving brief on summary judgment (Dkt. #61-2, p. 16-21) and in the opposition to Plaintiff's motion for partial summary judgment. (Dkt. #71). Defendants will not repeat them for a third time here.

Defendants do wish to address one issue raised by Plaintiff, which is the "retroactivity" of the Tip Income Protection Act.[19] Defendants contend that 29 C.F.R. § 531.59 was invalid *ab initio*, based on the fact that it exceeds the bounds of 29 U.S.C. § 203(m) and seeks to impose new disclosures beyond those which are expressly required by the statute. The Tip Income Protection Act is relevant because it expressly recognizes that the terms of those regulations "are not addressed by section 3(m) of the Fair Labor Standards Act of 1938" – in other words, that the regulation impermissibly exceeds the scope of the statute. This is a clear statement from Congress, in the text of the Act (not mere legislative history) stating that the regulation went too far. If this was true in 2018, it was true in 2011.

Plaintiff states that no other case has held that § 531.59 is ineffective for the reasons argued herein. This is true. But no other case has rejected this argument, either. Indeed, before the passage of

---

[18]The Sixth Circuit's recent decision in *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018), is interesting and instructive. The defendant pastor exercised what the DOL called "spiritual coercion" to convince people to volunteer at the church's adjoining restaurant. The Court held that "feelings of pressure and coercion" were not cognizable under the FLSA. *Id.* at 764. "The type of coercion with which the FLSA is concerned is economic in nature, not societal or spiritual." *Id.* at 767. Here, Ducharme clearly did not face any *economic* consequences when she chose not to share tips. While she may claim that she felt guilty for not sharing, that is irrelevant under the law.

[19]Plaintiff claims that the Act is "explicitly not retroactive," but Defendants see no provision in the Act stating that it is intended to be prospective only, or setting forth a date certain for its effectiveness.

the Tip Income Protection Act, it would likely not have occurred to employers to make this argument. That Act now includes an express Congressional statement disapproving of the regulatory overreach, and this Court must honor that statement of Congressional intention.

### C.     The Untipped Work Claim Should be Dismissed

Finally, Plaintiff claims that she performed too much untipped work. Unfortunately for her, at her deposition she admitted that she performed a very limited amount of untipped work – handing out checks for beer or liquor deliveries; stocking the beer color; and paying out video poker winnings. (*See* Dkt. #61-2 at p. 22 and deposition citations therein). At deposition, Ducharme testified that this work didn't take very long. Yet she has now submitted a declaration adding new supposedly untipped duties,[20] and stating that she spent "more than twelve minutes of every hour" doing this work. (Ducharme Decl., ¶ 9). This claim is absurd on its face – there are just not that many beer deliveries, or video poker jackpots, in a day. More importantly, it is a textbook sham affidavit, drafted in an attempt to contradict prior deposition testimony.[21] It should therefore be given no credence by the Court.

There is simply no factual support to show that Ducharme spent anything more than a *de minimis* amount of time on untipped work. This claim should be dismissed.

## CONCLUSION

Plaintiff claims that this motion for summary judgment is "audacious." To the contrary, it is well supported by the facts and the law. Drinking on the job, during your shift, knowing it was against company rules, while being recorded – admitting all this, and then *suing*? That's audacious. Defendants' motion for summary judgment should be granted in full.

---

[20] Many of the newly remembered duties – restocking cups, cutting up lemons or limes, pouring orange juice, and counting the cash register – are clearly within the normal job duties of any bartender and are immediately and directly related to her tipped work. It is a mystery why they are mentioned here.
[21] A "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment," *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000), and "a party who has been examined at length on deposition" cannot "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony." *Id*.

Respectfully Submitted,

 */s Charles J. Stiegler*
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

and

RENEE G. CULOTTA (24436)
ELSPETH L. DOSKEY (37997)
FRILOT, LLC
1100 Poydras Street
3800 Energy Centre
New Orleans, LA  70163
Telephone:  (504) 599-8000
Facsimile:   (504) 599-8100
rculotta@frilot.com
edoskey@frilot.com

*Counsel for Defendants*