UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NICOLE DUCHARME,
    *Plaintiff*

VERSUS

CRESCENT CITY DÉJÀ VU, L.L.C., ET AL.,
    *Defendants*

CIVIL ACTION NO. 18-4484

DIVISION: 1

MAGISTRATE JUDGE
JANIS VAN MEERVELD

## ORDER AND REASONS

Before the Court are:

(1) Crescent City Déjà Vu, L.L.C.'s Motion for Judgment on the Pleadings regarding Nicole Ducharme's claims under the federal Pregnancy Discrimination Act and the Louisiana Pregnancy Discrimination Act (Rec. Doc. 62); and

(2) the Motion for Summary Judgment seeking dismissal of all of Nicole Ducharme's present claims filed by defendants Crescent City Deja Vu, L.L.C. ("CCDV") and Mary Salzer (Rec. Doc. 61).

For the following reasons, CCDV's Motion for Judgment on the Pleadings is DENIED in part and DENIED as moot in part; and Defendants' Motion for Summary Judgment is GRANTED as to Ms. Ducharme's discrimination claims under Title VII and the Louisiana Employment Discrimination Law, and as to Ms. Ducharme's Fair Labor Standards Act claims, the Motion remains under submission.

## Background

Plaintiff Nicole Ducharme alleges that defendants violated Title VII of the Civil Rights Act and the Louisiana Pregnancy Discrimination Act ("LPDA") when she was unlawfully fired from

her employment at the Déjà Vu Bar & Grill[1] where she worked as a bartender and server after terminating her pregnancy. She also alleges that the defendants violated her rights under the Fair Labor Standards Act ("FLSA") by failing to make required disclosures about the tip credit they were taking, by requiring her to "tip out" employees who worked in the kitchen, and by requiring her to perform tasks she could not get tipped for (like cleaning, stocking, and ordering products) without paying minimum wages for those tasks. Ducharme filed this lawsuit against her employer CCDV and her manager Ms. Salzer on April 30, 2018. The parties consented to proceed before the undersigned magistrate judge, and trial is set to begin on June 10, 2019.

Facts Relevant to Discrimination Claims

In September 2017, Ms. Ducharme told Ms. Salzer that she had become pregnant and that she was planning on having an abortion. Salzer Decl., Rec. Doc. 61-3, at 3. She requested two days off to have the procedure, and Ms. Salzer said she could and arranged the schedule accordingly. Id. Ms. Salzer declared that she "was not upset at Nicole for having an abortion," and she has no opinion about abortion. Id. at 28-30; Salzer Depo., Rec. Doc. 61-7, at 106-108. In her brief, she asserts that she did not have any reaction to the news of Ms. Ducharme's plan to abort. Ms. Ducharme disputes this characterization of Ms. Salzer's reaction. Ms. Ducharme testified that Ms. Salzer began treating her "crappily" and "indifferently," and changed her mind about giving Ms. Ducharme a ride. Ducharme Depo., Rec. Doc. 61-9, at 77. Ms. Salzer asserts that while Ms. Ducharme was off work to have the procedure, server John Robarge came to her and told her that he had seen Ms. Ducharme drinking many times while she was still on the clock, but after Ms. Salzer had left for the day. Salzer Decl., Rec. Doc. 61-3, at 3. In his declaration, Mr. Robarge confirmed that he informed Ms. Salzer that he had seen Ms. Ducharme drinking. Robarge Decl.,

---

[1] Plaintiff alleges, and CCDV admits, that CCDV does business as Deja Vu Bar & Grill.

Rec. Doc. 61-6, at 2. Ms. Salzer asserts that she went to the security tapes to see if she could confirm that Ms. Ducharme was drinking while on the clock. Salzer Decl., Rec. Doc. 61-3, at 3. She observed Ms. Ducharme making an alcoholic drink and drinking it while still behind the bar. Id.  The video also shows Ms. Ducharme giving a drink to another person without charging him for it. Id.  CCDV decided to terminate Ms. Ducharme for drinking on the job. Ducharme Separation Notice, Rec. Doc. 61-14. The CCDV handbook provides that AN EMPLOYEE INVOLVED IN ANY OF THE FOLLOWING CONDUCT MAY RESULT IN DISCIPLINARY ACTION UP TO AND INCLUDING IMMEDIATE TERMINATION WITHOUT A WRITTEN WARNING. CCDV Handbook, Rec. Doc. 61-10, at 10-11. The referenced list of infractions includes "[u]se of or being under the influence of alcohol during scheduled shift." Id.  And Ms. Ducharme admitted that she knew there was a rule against drinking alcohol on the job, although she contends that everyone did so anyways. Ducharme Depo., Rec. Doc. 61-9, at 16. Ms. Salzer testified that she had previously given Ms. Ducharme a verbal warning that she was not allowed to drink on the job. Salzer Depo., Rec. Doc. 61-7, at 3-4. Ms. Ducharme disputes this and has declared that she never received a verbal warning. Ducharme Decl., Rec. Doc. 68-2, at 1.

Ms. Salzer says she also looked at the tapes to see if Ms. Ducharme's boyfriend, Marshall Rudd, was drinking on the job. Salzer Decl., Rec. Doc. 61-3, at 3. She had heard rumors that he had been drinking, but because he works the graveyard shift, Ms. Salzer had never confirmed it. Id.  After watching the video for a brief time, she saw Mr. Rudd pouring a drink and drinking it while on the clock. Id.  She decided to terminate him as well. Id.

## Motions before the Court

CCDV has filed a Motion for Judgment on the Pleadings regarding Ms. Ducharme's claims under the federal Pregnancy Discrimination Act and the LPDA for failing to plead the requisite

number of employees for the PDA or LPDA to apply and arguing further that neither the PDA nor the LPDA recognize an abortion as a protected characteristic. CCDV and Ms. Salzer have filed a Motion for Summary Judgment, arguing that Ms. Ducharme's FLSA minimum wage claim fails because she earned more than the minimum wage, that her tip pool claim fails because there was no tip pool, and that her unlawful termination claim fails because she admits to drinking on the job in violation of CCDV rules. They urge that Ms. Ducharme's lawsuit should be dismissed in its entirety. At this time, the Court addresses CCDV's motion for summary judgment on Ms. Ducharme's unlawful termination claim. The court will address the remainder of defendants' motion for summary judgment at the same time as it addresses Ms. Ducharme's pending Motion for Partial Summary Judgment arguing that CCDV failed to provide Ms. Ducharme with the FLSA required notifications before an employer can take a tip credit.

<u>Law and Analysis</u>

1. *Standard for Judgment on the Pleadings*

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." <u>Doe v. MySpace, Inc.</u>, 528 F.3d 413, 418 (5th Cir. 2008). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." <u>Id.</u> (quoting <u>Hughes v. Tobacco Inst., Inc.</u>, 278 F.3d 417, 420 (5th Cir. 2001) (alteration in original). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 387 (5th Cir. 2010).

To survive a motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual

allegations must be enough to raise a right to relief above the speculative level." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

### a. Number of Employees

CCDV argues that judgment on the pleadings is appropriate as to Ducharme's pregnancy discrimination claims because she has failed to plead any facts that would satisfy her burden of proving that CCDV has the requisite number of employees for Title VII or the LPDA to apply. Title VII applies to employers who have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The LPDA applies to employers who employ "more than twenty-five employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." La. Rev. Stat. § 23:341(A). CCDV points out that neither Ducharme's First Amended Complaint nor her proposed Second Amended Complaint contain any allegations regarding the number of individuals employed by CCDV.

Ms. Ducharme admits that her complaint does not explicitly allege that CCDV had more than 15 or 25 employees. (Rec. Doc. 70, at 3). But, she points out that the complaint references Ms. Ducharme's work schedule. In opposition to CCDV's motion, she attaches a schedule dated August 28, 2017 that lists 26 employees. She argues that this document should be incorporated by

reference into her pleadings. Alternatively, she requests leave to amend to explicitly allege that CCDV has more than 25 employees.

In reply, CCDV argues that the work schedule cannot be incorporated by reference because the August 28, 2017, schedule is not referred to specifically, nor is it central to Ms. Ducharme's claims as required for documents to be considered part of the pleadings. Even if the document was considered by the court, CCDV submits that Ms. Ducharme still has not met the pleading requirements because the one-week schedule does not show 26 employees (according to CCDV, one of the individuals listed was an IT consultant according to a declaration submitted with CCDV's reply memorandum), nor does it show that CCDV had more than 25 employees for more than twenty calendar weeks. Finally, CCDV argues that Ducharme should not be allowed to amend her complaint because she has already done so once and has sought to do so a second time without alleging a number of employees.

The court finds that Ms. Ducharme's pleading fails to sufficiently allege the minimum number of employees under Title VII or LPDA. References to being off the schedule or checking her schedule are insufficient to incorporate the August 28, 2017, schedule into the complaint. Moreover, even if it had been incorporated, as CCDV argues, that schedule is insufficient to amount to an allegation of the minimum number of employees for the minimum number of weeks. This leaves the issue of whether Ms. Ducharme should be allowed to amend her complaint to correct this deficiency.

The court finds it appropriate to allow Ms. Ducharme to amend her pleading to allege the number of employees. As discussed below, the parties have briefed the merits of the issue, and it is clear that Ms. Ducharme has sufficient evidence as to whether CCDV has the requisite number of employees to survive summary judgment. Her amendment is, thus, important so that she can

maintain her claim. Further, the court finds that CCDV would not suffer any prejudice by the amendment being allowed. It has defended this lawsuit for over a year without asserting that it is not covered by Title VII or the LDPA.

Nonetheless, because the court has determined it most efficient to address the merits of Ms. Ducharme's discrimination claims and has concluded that Ms. Ducharme cannot survive summary judgment, it will not be necessary for Ms. Ducharme to file an amended pleading at this time. In assessing defendants' motion for summary judgment, the court has assumed that Ms. Ducharme had already properly plead the number of employees.  Accordingly, as to number of employees alleged, the motion for judgment on the pleadings is DENIED as moot.

*b. Abortion as a Protected Characteristic Under Title VII*

CCDV argues that Ducharme's pregnancy discrimination claims should be dismissed because Title VII does not recognize abortion as a protected characteristic. Title VII as amended by the Pregnancy Discrimination Act prohibits employers from taking adverse employment actions "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000e(k). It also provides that:

> women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: *Provided*, That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

Id.  CCDV argues that abortion is not pregnancy, childbirth, or a medical condition related to pregnancy and that Congress could have included abortion as a protected characteristic but did not do so. It insists that when interpreting statutory text, the court's "task is to give effect to the

language Congress has enacted, not to read additional meaning into the statute that its terms do not convey." Yates v. Collier, 868 F.3d 354, 369 (5th Cir. 2017). CCDV notes that although other circuits have found abortion to be a protected characteristic, the Fifth Circuit has not done so.

In opposition, Ducharme points out that the only appellate courts to have addressed the issue of whether abortion is covered by Title VII have found that it is. Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364 (3d Cir.), order clarified on other grounds, 543 F.3d 178 (3d Cir. 2008) ("Clearly, the plain language of the statute, together with the legislative history and the EEOC guidelines, support a conclusion that an employer may not discriminate against a woman employee because she has exercised her right to have an abortion. We now hold that the term 'related medical conditions' includes an abortion."); Turic v. Holland Hosp., Inc., 85 F.3d 1211, 1214 (6th Cir. 1996) ("Thus, the plain language of the statute, the legislative history and the EEOC guidelines clearly indicate that an employer may not discriminate against a woman employee because 'she has exercised her right to have an abortion.'). Ducharme cites to legislative history indicating that abortion is covered by the pregnancy language. H.R. Rep. No. 95-948, at 7 (1978), as reprinted in 1978 U.S.C.C.A.N. 4749, 4755 ("Because the bill applies to all situations in which women are 'affected by pregnancy, childbirth, and related medical conditions,' its basic language covers decisions by women who chose to terminate their pregnancies. Thus, no employer may, for example, fire or refuse to hire a woman simply because she has exercised her right to have an abortion."). She also points out that the Equal Employment Opportunity Commission guidelines provide that

> The basic principle of the Act is that women affected by pregnancy and related conditions must be treated the same as other applicants and employees on the basis of their ability or inability to work. A woman is therefore protected against such practices as being fired, or refused a job or promotion, merely because she is pregnant or has had an abortion.

29 C.F.R. § 1604, App. She adds that although the Fifth Circuit has not addressed abortion, it has found other pregnancy related medical conditions are covered. E.g., E.E.O.C. v. Houston Funding II, Ltd., 717 F.3d 425, 428 (5th Cir. 2013) ("[W]e hold that lactation is a related medical condition of pregnancy for purposes of the PDA.")  Harper v. Thiokol Chem. Corp., 619 F.2d 489, 491–92 (5th Cir. 1980) ("[P]olicy of requiring women who have been on pregnancy leave to have sustained a normal menstrual cycle before they can return to work clearly deprives female employees of employment opportunities and imposes on them a burden which male employees need not suffer.").

In reply, CCDV insists the scope of Title VII is an undecided issue in the Fifth Circuit. It argues that reference to the legislative history is inappropriate where the statutory text is clear. It adds that Ms. Ducharme has cited the deliberations of the House Committee on Education and Labor and that these notes do not amount to legislative history. CCDV seeks to distinguish the Fifth Circuit cases regarding pregnancy related medical conditions like lactation and menstruation by arguing that Ms. Ducharme has not alleged that CCDV discriminated against her because of any medical condition that led to her decision to undergo an abortion. Instead, CCDV insists, she alleges the abortion itself led to her termination.

The court notes that in paragraph 26 of Ms. Ducharme's complaint, she states that she got very sick and anemic during her pregnancy, that she had health problems including gestational diabetes and hypertension during a previous pregnancy, and that she was forty years old and had concerns with being pregnant for that reason. (Rec. Doc. 25, at 3-4). She asserts that she decided to get a "medical abortion." Id.  at 4. She alleges that when she informed her supervisor, Ms. Salzer, that she needed two days off to get an abortion, Ms. Salzer gave her a serious and disapproving look. Id.  She alleges that she then told Ms. Salzer her health reasons for needing to

terminate the pregnancy. Id.  She alleges that CCDV terminated her employment on the basis of a medical condition related to her pregnancy. Id.  at 7.

The court finds that abortion is encompassed within the statutory text prohibiting adverse employment actions "because of or on the basis of pregnancy, childbirth, or related medical conditions." While an abortion is not a medical condition related to pregnancy in the same way as gestational diabetes and lactation, it is a medical procedure that may be used to treat a pregnancy related medical condition. If a person has to take breaks to pump milk because she is lactating as a result of a pregnancy, she is protected from termination by Title VII. Houston Funding, 717 F.3d at 430.  If a person has to have an abortion because she is suffering from anemia as a result of a pregnancy, she, too, is protected from termination. Moreover, an abortion is only something that can be undergone during a pregnancy. Title VII requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C.A. § 2000e(k). A woman terminated from employment because she had an abortion was terminated because she was affected by pregnancy.  The conclusion that an abortion is protected by the pregnancy language of Title VII is consistent with the only two courts of appeals to have ruled on the issue. C.A.R.S. Prot. Plus, Inc., 527 F.3d at 364; Turic, 85 F.3d at 1214. It is consistent with the EEOC's own interpretation. 29 C.F.R. § 1604, App. As the Third Circuit noted in C.A.R.S., the interpretation of "the enforcing agency is entitled to great deference. Griggs, 401 U.S. 424, 433–34 (1971). Accordingly, the court holds that Title VII as amended by the Pregnancy Discrimination Act extends to abortions.

There is no dispute that Ms. Ducharme alleges that she was terminated for having an abortion. She also alleges that she underwent the abortion because she was suffering from anemia, because she had previously suffered from gestational diabetes and hypertension during pregnancy,

and because she was at an advanced age for pregnancy. Just as the need for breaks to pump breast milk or requiring an employee to have a normal menstrual cycle before they can return to work "imposes on [women] a burden which male employees need not suffer," so too does the termination of a pregnancy, whether medically necessary or not. See Harper, 619 F.2d at 491-922.

CCDV is not entitled to judgment on the pleadings dismissing Ms. Ducharme's Title VII pregnancy discrimination claim for failing to plead a protected characteristic.

   *c.  Abortion as a protected characteristic under the LPDA.*

CCDV also argues that abortion is not a protected characteristic under the LPDA. It submits that the Louisiana legislature has expressly stated that abortion is contrary to the "longstanding policy of this state." La. Rev. Stat. § 40:1061.8 ("The Legislature finds and declares that the longstanding policy of this State is to protect the right to life of the unborn child from conception by prohibiting abortion impermissible only because of the decisions of the United States Supreme Court and that, therefore, if those decisions of the United States Supreme Court are ever reversed or modified or the United States Constitution is amended to allow protection of the unborn then the former policy of this State to prohibit abortions shall be enforced."). It points out that Louisiana law prohibits employers from taking adverse actions against employees "for refusal to take part in, recommend or counsel an abortion for any woman." La. Rev. Stat. § 40:1061.2(B). Yet there is no such language protecting abortion under the LPDA. CCDV argues that federal courts should not recognize a cause of action for abortion discrimination when no Louisiana court has done so. Johnson v. Sawyer, 47 F.3d 716, 729 (5th Cir. 1995) ("We have long followed the principle that we will not create 'innovative theories of recovery or defense' under local law, but will rather merely apply it 'as it currently exists.'") (quoting Galindo v. Precision Am. Corp., 754 F.2d 1212, 1217 (5th Cir. 1985)).

Ms. Ducharme argues that abortion is protected under the LPDA, which, like Title VII, prohibits an employer from discriminating on the basis of "pregnancy, childbirth, or related medical condition." She insists that the plain language of the LPDA supports the conclusion that an employer cannot discriminate against an employee for having an abortion by including the language "related medical conditions." She notes this language was incorporated into the LPDA one year after the United States Court of Appeals for the Sixth Circuit had ruled that this language included abortion. She submits that if the Louisiana legislature had intended a different result, it could have explicitly said so. Ms. Ducharme argues that the court must look only to the language of the statute itself and where the language is clear, as Ms. Ducharme insists it is here, the court should not conduct a further investigation into the statute's meaning. See La. Rev. Stat. § 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). Finally, Ms. Ducharme adds that Ms. Salzer admitted under oath that it is illegal to fire someone because they are going to have an abortion.[2]

The court finds that because the LPDA includes the exact same language as Title VII, it is subject to the same interpretation. As analyzed above, an abortion is included in the language "pregnancy, childbirth, or related medical condition." CCDV is not entitled to judgment on the pleadings on the LPDA claim for failure to plead a protected characteristic.

*2. Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

---

[2] CCDV points out that Ms. Salzer is not a legal expert

The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

   *a. Statutory minimum number of employees.*

In its motion for summary judgment,[3] CCDV argues that Ms. Ducharme's pregnancy discrimination claim should be dismissed because she has no evidence to show that CCDV meets the statutory minimum number of employees set forth in Title VII or the LEDL. As noted above, Title VII applies to employers who have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The LPDA applies to employers who employ "more than twenty-five employees within this state

---

[3] As discussed in Section 1.a. above, the court assumes that Ms. Ducharme's complaint has properly alleged the requisite number of employees.

for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." La. Rev. Stat. § 23:341(A).

CCDV submits that Ms. Ducharme cannot adduce any admissible evidence to show that it employed 15 or 26 employees for each working day in 20 or more weeks in the current or preceding calendar year. In opposition, Ms. Ducharme insists she does have such evidence. She points to her own declaration that CCDV had more than 25 employees for each working day in each of 20 or more calendar weeks. (Rec. Doc. 68-2). She asserts this is based on her observation. Id. She also points to an employee schedule listing 26 employees for the week of August 28, 2017. (Rec. Doc. 68-3). In reply, CCDV argues that Ms. Ducharme's declaration regarding the number of employees is not based on her first-hand knowledge because she was not responsible for human resources or payroll functions and did not review CCDV's books or perform accounting work. It insists that Ms. Ducharme has no knowledge of how many employees CCDV employed at any time, let alone over the requisite number of weeks. CCDV also submits that the work schedule does not prove that it had 26 employees because one of the listed individuals was an outside IT consultant, not an employee. Further, CCDV argues that at best, the schedule shows who was employed during the week of August 28, 2017, and does not show that CCDV employed the requisite number of employees for 20 or more calendar weeks. For example, in Brooks v. Popeye's, Inc., a court of appeals in Louisiana held that the plaintiff had failed to prove that the defendant employed more than the required 25 employees for the Louisiana Employment Discrimination Law to apply where plaintiff relied only on the defendant's interrogatory response listing 176 employees who had been employed over a nine-month period. 2011-1086 (La. App. 3 Cir. 3/14/12), 101 So. 3d 59, 63, on reh'g (June 27, 2012), writ denied, 2012-1755 (La. 11/2/12), 99 So. 3d 676.

The court has already determined that as a matter of law, a single week's schedule is insufficient to show that CCDV had the requisite number of employees for twenty or more calendar weeks. However, Ms. Ducharme has also submitted a declaration. The court rejects CCDV's argument that the declaration cannot be considered because it is based only on her observations and she did not have any human resources or payroll duties. As an employee, it is entirely possible that she would have observed the number of other employees by viewing the schedule or otherwise. Ms. Ducharme declares that she observed more than 25 employees within Louisiana for each working day in each of twenty or more calendar weeks. She cites the August 28, 2017 schedule as an example. Although CCDV says this schedule does not show 26 employees because one of them was an IT consultant, at best, this creates a fact issue that would preclude summary judgment in her favor on the LPDA claims. CCDV essentially admits that this one schedule shows well over the 15 employees required for Title VII to apply. The court finds that Ms. Ducharme has met her burden to present evidence that CCDV has the requisite number of employees under Title VII and the LPDA to survive summary judgment on this basis. The court further finds it conspicuous that CCDV provides no contrary evidence or even an assertion that it does not meet the applicable 15/25 employee threshold, maintaining only that it does not have the burden to do so. The court will therefore address the merits of this claim.

b. *Basis for termination from employment.*

CCDV argues that Ducharme's pregnancy discrimination claims should be dismissed because she has no evidence that CCDV terminated her because of her pregnancy. "In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Id.

at 897.  "If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." Id. at 896.  If the plaintiff relies on circumstantial evidence of discrimination, then the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applies. Id.  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). In Title VII cases, the prima facie case will vary depending on the circumstances.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n. 6 (1981). For example, the Fifth Circuit has held that "[i]n work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, [non-protected class member] employees who engaged in similar acts were not punished similarly". Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995).  If the plaintiff establishes a *prima facie* case of discrimination, "the employer must respond with a legitimate, nondiscriminatory reason for its decision." Russell, 235 F.4d at 222.  "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Id.  "If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination." Sandstad, 309 F.3d at 897. "The plaintiff, who always has the ultimate burden, must then 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" Outley v. Luke & Assocs., Inc., 840 F.3d 212, 216 (5th Cir. 2016) (quoting Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 233 (5th Cir. 2015)).

i.       *Prima facie case of discrimination*

CCDV submits that Ms. Ducharme has failed to establish a *prima facie* case of discrimination because abortion is not a protected class or protected characteristic.[4] Even if abortion is a protected class, CCDV insists Ms. Ducharme cannot make a *prima facie* case of discrimination because she cannot establish that she was replaced by an individual who was not a member of the protected class.[5]

Ms. Ducharme responds that she can establish a *prima facie* case of discrimination. She submits that showing replacement is only one way of establishing a *prima facie* case and points out that "[i]n work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, [non-protected class member] employees who engaged in similar acts were not punished similarly". Mayberry, 55 F.3d at 1090. She insists this test is met here. She cites her own declaration that "other employees who did not have abortions would drink on the job but did not get fired." Ducharme Decl., Rec. Doc. 68-2, at 1, ¶4). She also cites her own deposition testimony that other employees were doing heroin in the employee bathroom during working hours and that she reported this to Ms. Salzer. Ducharme Depo., Rec. Doc. 68-6, at 4. She also testified that she observed other employees smoking marijuana on the property, but she did not report this conduct. Id. at 5. She further testified that other employees drank alcohol on the job, including the cooks and an individual named Derrick. Id. at 5-6. She testified that Ms. Salzer knew about Derrick drinking on the job because she and Ms. Salzer would talk about it when he was intoxicated at work. Id. at 6. She testified that Derrick

---

[4] As discussed above, that is not a basis for dismissal because Title VII and LPDA include protection for abortion.
[5] For this purported defect, defendants cite Bauer v. Albemarle Corp., where the Fifth Circuit held that "[t]o establish this *prima facie* case under Title VII, the plaintiff must prove that she is a member of a protected class, she was qualified for the position that she held, she was discharged, and after her discharge was replaced with a person who is not a member of the protected class." 169 F.3d 962, 966 (5th Cir. 1999). As discussed above, however, the facts sufficient to establish a prima facie case will vary.

was fired while he was on vacation. Id. Ms. Ducharme further cites the declaration of Kelsey O'Morrow, a former CCDV employee, who observed "other employees in the front of the house who were obviously on substances." O'Morrow Decl., Rec. Doc. 68-5, at 1, ¶6).

Ms. Ducharme also argues that CCDV's own records show that Ms. Ducharme was not punished similarly to other employees. Ms. Salzer testified that she gave Ms. Ducharme "one verbal warning"[6] about drinking on the job before firing her, Salzer Depo., Rec. Doc. 68-4, at 9, while other employees were given many warnings before being terminated. See Sealed Ex. D to Ducharme's Opposition, Rec. Doc. 68-7 (separation notice pertaining to an employee who "[c]ontinued drinking alcohol on the job after many warnings").

The court finds that Ms. Ducharme has failed to establish a *prima facie* case of discrimination. She argues that non-protected class members who engaged in similar conduct were not punished similarly. Her primary evidence to support this conclusion is her own declaration, which generically states that other employees who did not have abortions were not fired for drinking on the job, without listing any specific examples of employees who did so. Even if she had listed employees, she does not declare that CCDV was on notice of these employees drinking on the job so she cannot show that such employees were similarly situated. Further, without specific examples,[7] CCDV cannot address whether it had notice of alcohol consumption during work hours by such employees and what discipline, if any, may have resulted. Ms. Ducharme's testimony that employees used heroin or marijuana during work hours is similarly insufficient because there is no evidence that CCDV had knowledge of these employee's activities. Unmentioned in her memorandum in opposition to the motion for summary judgment, but

---

[6] Ms. Ducharme refutes that, claiming she was never warned. Ducharme Decl., Rec. Doc. 68-2, at 1.
[7] Given her assertions that "everybody" was drinking on the job, one would expect that she had known the names of those who were doing so at the time she filed suit. She might also have discovered the names of other employees during the course of discovery.

contained in the testimony she cites in support of her assertion that others drank on the job, is Ms. Ducharme's testimony she and Ms. Salzer would talk about an employee named Derrick when he was intoxicated on the job. This is perhaps the only evidence that could possibly be construed as showing disparate treatment, but this theory is undercut by Ms. Ducharme's own testimony that Derrick was fired. Moreover, the court takes note that Ms. Ducharme failed to reference Derrick explicitly in her declaration or in her opposition memorandum, suggesting that she does not consider him a comparator. Ms. Ducharme also cites to the separation notice of her boyfriend, Mr. Rudd, who was fired for drinking on the job after "multiple warnings." She says she suffered disparate treatment because she was only given one warning, according to Ms. Salzer herself; Ms. Ducharme denies being given any warnings. But Ms. Salzer explained in her testimony and declaration that although she had previously heard rumors that Mr. Rudd had been drinking on the job, she did not have evidence of his drinking on the job until she saw the video whereupon, just like with Ms. Ducharme, she terminated him from employment. Ms. Ducharme does not dispute this explanation. Ms. Ducharme says she also experienced disparate treatment because the only other people besides Ms. Ducharme and her boyfriend who were fired for drinking had been drinking so much that they were seriously impaired. In contrast, the video that allegedly caused Ms. Salzer to decide to terminate Ms. Ducharme showed Ms. Ducharme taking just one sip of an alcoholic drink. This is a distinction without a difference. Both drinking on the job and being intoxicated on the job are terminable offenses. Ms. Ducharme does not contest that other employees were terminated for being intoxicated on the job. Ms. Ducharme does not deny that Mr. Rudd and employee M.B.D. were terminated for drinking on the job. Separation Notices, Rec. Doc. 61-15. The court finds that the evidence, even viewed most favorably to Ms. Ducharme,

cannot support a finding that others who engaged in similar conduct were treated differently than Ms. Ducharme.

Moreover, even if the court found that Ms. Ducharme had established a *prima facie* case of discrimination, as will be seen below, Ms. Ducharme's discrimination claims cannot survive summary judgment.

ii.     *Legitimate reason for termination*

CCDV submits that if the court finds Ms. Ducharme has established a *prima facie* case of discrimination, it can show a legitimate, non-discriminatory reason for termination. It says it fired Ms. Ducharme because she drank on the job. It cites Ms. Ducharme's separation notice, which provides as the reason for termination that Ms. Ducharme was drinking on the job and was rude to customers. It also cites Ms. Ducharme's testimony that she drank on the job "sometimes" and knew this was against the rules (although she stated that other employees drank on the job also). It cites Ms. Salzer's declaration that server Mr. Robarge told her that he had seen Ms. Ducharme drinking on the clock and that she thereafter reviewed security camera footage and saw Ms. Ducharme making an alcoholic drink and drinking it while still behind the bar. It cites the declaration of Mr. Robarge that he saw Ms. Ducharme taking shots before the end of her shift and that he told Ms. Salzer he had seen her drinking. CCDV has also submitted the security camera video footage. It notes that the video also shows Ms. Ducharme giving away a drink for free. It is undisputed that the CCDV handbook provides that use of alcohol while on shift and rude or improper behavior with customers is grounds for discipline, including termination.

Ms. Ducharme does not dispute that CCDV has shown a legitimate, non-discriminatory reason for terminating Ms. Ducharme. And this court agrees. It is undisputed that Ms. Ducharme was drinking alcohol on the job: she admitted to doing so at least monthly and the security camera

footage shows her doing so. It is undisputed that this conduct violates the rules as stated in the CCDV handbook. Ms. Ducharme admits she knew drinking alcohol on the job was against the rules. As for the timing, it is undisputed that while Ms. Ducharme was off of work to have the procedure, Mr. Robarge told Ms. Salzer that he had seen Ms. Ducharme drinking while she was on the clock and that thereafter, Ms. Salzer reviewed the security camera footage and found an example of Ms. Ducharme drinking alcohol while behind the bar. Defendants say this is why Ms. Ducharme was fired. The court finds the defendants have established a legitimate, non-discriminatory reason for Ms. Ducharme's termination. Thus, the court turns to whether Ms. Ducharme can show that this reason is mere pretext.

### iii.    Pretext for discrimination

CCDV argues that Ms. Ducharme cannot survive summary judgment because she has no evidence of pretext. It points out that Ms. Ducharme does not dispute that she was drinking on the job in violation of CCDV's rules. Thus, Ms. Ducharme cannot argue that the asserted justification was false. CCDV points out that other employees were also terminated for drinking on the job. CCDV has submitted separation notices for four employees who were terminated for being intoxicated on the job and two employees who were terminated for drinking alcohol on the job (including Mr. Rudd, discussed above). Separation Notices, Rec. Doc. 61-15.

CCDV characterizes Ms. Ducharme's position as an attempt to argue that she was less drunk than other employees who were fired. CCDV submits that this does not show pretext. CCDV argues that the issue is whether Ms. Ducharme can show that Ms. Salzer or CCDV were motivated by anti-abortion sentiment. It submits that there is no evidence that Ms. Salzer was motivated by anti-abortion sentiment: she has testified that she has no strong opinion on abortion and does not

disapprove of it, and Ms. Ducharme admitted she has no reason to believe that Ms. Salzer is religiously or politically minded.

In opposition, Ducharme argues that the drinking explanation is a pretext for unlawful sex discrimination. She submits that she has seven categories of evidence to support the finding of pretext. First, she cites temporal proximity. Ms. Salzer fired Ms. Ducharme on the day of her abortion procedure. Ms. Ducharme also contends that less than a week later, Ms. Salzer fired another female employee within a day of her abortion procedure.

Second, she argues that "[a] plaintiff may establish pretext 'by showing that . . . [her employer's] explanation is unworthy of credence.'" Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998), reh'g en banc granted, opinion vacated sub nom. Williams v. Wal-Mart Stores, Inc., 169 F.3d 215 (5th Cir. 1999), and opinion reinstated on reh'g sub nom. Williams v. Wal-Mart Stores, Inc., 182 F.3d 333 (5th Cir. 1999)) (third alteration in original). She submits that Ms. Salzer lied twice in about the video of Ms. Ducharme drinking. According to Ms. Ducharme, Ms. Salzer testified that on September 7, 2017, she went back less than a week in the security footage to find an example of Ducharme drinking. But she later conceded that she had to go back more than a month to August 6, 2017, to find an example. Ms. Ducharme also says that Ms. Salzer testified that the security camera footage was deleted after two weeks at one point, and after a month at another point.

Third, Ms. Ducharme submits that pretext can be shown by disparate treatment. Wallace, 271 F.3d at 220. She says she suffered disparate treatment because other employees who were caught drinking were given multiple warnings before being terminated, while she was only given one warning according to Ms. Salzer herself. Ms. Ducharme says she also experienced disparate

treatment because the only other people besides Ms. Ducharme and her boyfriend who were fired for drinking had been drinking so much that they were seriously impaired. In contrast, the video that allegedly caused Ms. Salzer to decide to terminate Ms. Ducharme showed Ms. Ducharme taking just one sip of an alcoholic drink.

Ms. Ducharme next argues that pretext can be shown when other employees, who are not members of the protected class, were "treated differently under circumstances 'nearly identical'" to the plaintiff's circumstances. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). She submits that other drinking and drug-using employees were not fired. She cites to her own declaration and the declaration of Ms. O'Morrow.

Ms. Ducharme also contends that pretext is shown by Ms. Salzer's reaction when she found out that Ms. Ducharme was having an abortion. According to Ms. Ducharme's testimony, Ms. Salzer changed her mind about giving Ms. Ducharme a ride, changed her attitude, and started treating Ms. Ducharme "crappily," and "indifferently." Finally, Ms. Ducharme contends that Ms. O'Morrow will testify directly as to pretext. Ms. Ducharme points out that Ms. O'Morrow's declaration states that she "knew" that Ms. Ducharme was "not fired for drinking on the job." O'Morrow Decl., Rec. Doc. 68-5, at 2). Ms. Ducharme argues that this evidence is enough to survive summary judgment.

In reply, CCDV responds to Ms. Ducharme's purported examples of pretext, arguing that they amount to no more than a subjective belief that CCDV acted wrongfully, or an assertion that the termination could not have been a coincidence. CCDV points out that the Fifth Circuit has held that "[a]lthough the temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence—without

more—is insufficient." <u>Fairchild v. All Am. Check Cashing, Inc.</u>, 815 F.3d 959, 968 (5th Cir. 2016). It says that although Ms. Ducharme was terminated on the day she underwent an abortion, this is not enough to show pretext. Further, it submits that the purported temporal proximity of Ms. Salzer terminating another employee who underwent an abortion at the time of that employee's abortion cannot show pretext because Ms. Salzer had no knowledge of the employee's pregnancy at the time of her termination. Ms. Salzer testified that she did not know the other employee was pregnant, the other employee testified that she had not told Ms. Salzer that she was pregnant and admitted that her pregnancy was not showing, and Ms. Ducharme admitted that she had not told Ms. Salzer that the other employee was pregnant.

CCDV submits that Ms. Salzer's uncertainty about the date of the video showing Ms. Ducharme drinking on the job does not show pretext. It insists that Ms. Ducharme has mischaracterized Ms. Salzer's testimony. Ms. Salzer testified as follows:

Q. You didn't go like weeks or a month back, did you?
A. I didn't have to.
Q. So it was within a couple of days in the past that you found this video?
MR. STIEGLER: Object to form.
BY MR. MOST:
Q. Okay. It wasn't weeks or a month, right?
A. I really don't remember.
Q. You just testified you didn't have to go back weeks or a month.
A. No. I just went back a chunk. It wasn't months. It could have been a week.

(Rec. Doc. 68-4, at 3). Ms. Salzer explained that by "chunk" she meant that she simply selected the timeline bar at the bottom of the video and clicked on one. (Rec. Doc. 86-1, at 4). CCDV argues that the date of the video is irrelevant and that all that matters is that the drinking occurred, was captured on the surveillance footage, and—according to CCDV—resulted in Ms. Salzer firing Ms. Ducharme.

CCDV argues that Ms. Ducharme cannot show she was treated differently because she received fewer warnings than the other employee terminated for drinking. CCDV explains that the other employee (who was Ms. Ducharme's boyfriend Marshall Rudd) was warned when Ms. Salzer suspected him of drinking although she had not yet seen him do so. Once she saw proof of his drinking on video, she terminated him.

Next CCDV submits that whether other fired employees were more impaired than Ms. Ducharme when they were terminated does not show that she was treated differently. It points out that Ms. Salzer never testified that Ms. Ducharme was terminated for having "one sip" of alcohol. The "one sip" language was that of Ms. Ducharme's counsel. Ms. Salzer's testimony seems to be that after she saw that "sip" she had seen enough. CCDV argues that although other terminated employees were more impaired than Ms. Ducharme, any amount of alcohol consumed on the job was a terminable offense. It insists that Ms. Ducharme cannot use this litigation to second guess employment decisions. Kimble v. Georgia Pac. Corp., 245 F. Supp. 2d 862, 874–75 (M.D. La. 2002) ("Employment discrimination laws were not intended to be vehicles for judicial second guessing of employment decisions, nor were they intended to transform the courts into personnel managers.").

CCDV next addresses Ms. Ducharme's contention that other employees were drinking and using drugs but were not fired. It submits that Ms. Ducharme has failed to identify any other employees, when they were drinking on the job, or whether Ms. Salzer knew about it. It points out that one of the alleged heroin users was in fact fired for being "not in condition to work" months before Ms. Ducharme's termination. CCDV submits that the other employees referred to by Ms. Ducharme and her witness Ms. O'Morrow were not under the same circumstances as Ms. Ducharme. The other employees are alleged to have been using heroin in the bathrooms or smoking

marijuana outside of the premises, while Ms. Ducharme was drinking alcohol in the bar, in plain view of customers, other employees, and video surveillance cameras.

CCDV argues that Ms. Ducharme's assertion that Ms. Salzer began treating her "crappily" is not supported by any specific examples.

CCDV submits that the declaration of Ms. O'Morrow that she does not believe Ms. Ducharme was fired for drinking on the job cannot prevent summary judgment. It points out that Ms. O'Morrow does not explain why she believes this or what evidence she has to support it. It argues that Ms. O'Morrow's statement amounts to her subjective belief. It insists that it cannot be considered direct evidence of pretext.

CCDV concludes by arguing that there is no evidence in this case that Ms. Salzer ever made any statements about her opinions on abortion or any religious or political opinions on the issue. CCDV argues that there is no evidence here of any discriminatory motive and urges that its motion for summary judgment be granted.

Viewing all the evidence in the light most favorable to Ms. Ducharme, the court finds that she cannot show that CCDV's stated reason for terminating her was a pretext and that the real reason was an anti-abortion animus. Almost all of Ms. Ducharme's evidence of pretext falls away for the reasons cited by CCDV. The other employee purportedly terminated due to an abortion actually does not support Ms. Ducharme's claim because it is undisputed that Ms. Salzer did not know the employee was pregnant or having an abortion. When viewed in its entirety, Ms. Salzer's uncertainty regarding how far back on the surveillance tape she had to look to find evidence of Ms. Ducharme drinking does not raise any questions as to the veracity of her testimony or explanation. It is obvious that any discrepancies in her testimony result from counsel's questioning and not from affirmative misstatements. The "more impaired" disparate treatment argument fails

because the fact that others engaged in more egregious behavior and were fired does not negate that Ms. Ducharme's behavior violated CCDV's rules. As discussed above, most of Ms. Ducharme's "examples" of other employees drinking and using drugs fail to offer a similar comparison because most of the examples are non-specific and without any indication that Ms. Salzer had evidence of the illicit activity. Unlike drinking alcohol in view of a security camera, employees doing heroin in the bathroom could not be viewed doing so on security footage. In contrast, while insisting in her Declaration that other employees who had not had abortions drank on the job, used marijuana and heroin at CCDV, but did not get fired, plaintiff did not name a single such employee. Ducharme Decl., Rec. Doc. 68-2. As such, Ms. Ducharme's allegations that other employees who did not have abortions were allowed to drink or abuse drugs on the job and not get terminated fails because she has no proof that this happened, no proof that management knew about it but did not react, and no proof that the reason for ignoring it, to the extent drinking or being impaired on the job was ever ignored or not reacted to, was their status as not having had abortions.[8] At best, Ms. Ducharme has the example of Derrick, an example she does not even mention or cite in the section of her opposition memorandum attempting to establish pretext. Although Ms. Ducharme testified that she and Ms. Salzer discussed Derrick when he was intoxicated at work, Ms. Ducharme also testified that Derrick was fired. Her failure to do more with Derrick as a possible comparator than to include a page of transcript concerning Derrick indicates that Ms. Ducharme does not consider him a comparator.

Perhaps most fatal to plaintiff's pregnancy discrimination claim, however, is the complete absence of any support for any alleged anti-abortion animus by Ms. Salzer. When analyzing

---

[8] Nor does plaintiff make the case for Ms. Salzer knowing of Ms. Ducharme drinking on the job before this but turning a blind eye to it. When asked if Ms. Salzer knew plaintiff was drinking on the job, she responded "probably" because "there's cameras everywhere." She simply believed that Ms. Salzer watched the cameras 24/7. Ducharme Depo., Rec. Doc. 61-9, at 16.

whether inconsistencies have been shown in defendant's proferred reasons for the adverse job action, it should not be forgotten that it is incumbent upon plaintiff not just to show false reasons were given for her termination to defeat defendant's evidence regarding legitimate non-discriminatory business reasons, but that defendant's stated reasons were pretextual *for discrimination*. See Outley, 840 F.3d at 216 (quoting Burton, 798 F.3d 233) ("The plaintiff, who always has the ultimate burden, must then 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination'"). She "must do more than merely dispute [defendant's] reasoning and methods." Vess v. MTD Consumer Grp., Inc., 755 F. App'x 404, 409 (5th Cir. 2019). She must also show that the determination "was reached in bad faith." Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015).

Here, it is uncontroverted that Ms. Salzer had never said anything about abortion or religion to Ms. Ducharme at any time during their 18-month relationship. And apparently, that relationship was a very good one. According to plaintiff, she shared the fact of her pregnancy and her intention to abort with Ms. Salzer because "We were close, and I told her everything, because I loved her…. I thought she loved me, too." Ducharme Depo., Rec. Doc. 61-9, at 22. Ms. Ducharme does not dispute that when she informed Ms. Salzer that she was planning on undergoing an abortion, Ms. Salzer did not attempt to talk her out of it, and did not say that she disapproved of the decision. Pl. Statement of Materials Facts, Rec. Doc. 68-1, at 6. There is no evidence that prior to that, Ms. Salzer had ever said anything to suggest to Ms. Ducharme that she would disapprove of the abortion. Ms. Salzer had never said anything political about abortion. Ducharme Depo., Rec. Doc. 61-9, at 23.Ms. Ducharme did not think of Ms. Salzer as religious. Id. In her declaration, Ms. Salzer confirmed her neutral position on the issue:

> I do not have a strong opinion about abortion, and I do not consider myself "pro-life." I have no opinion on whether anyone should, or should not, have an abortion.

I believe that abortion is personal business and it is not something I would expect to discuss with CCDV employees.  I was not upset at Nicole for having an abortion.  Her decision to have an abortion did not enter into my mind when I decided to fire her.

Decl. of Salzer, Rec. Doc. 61-3, at 4, ¶28-30.  This is consistent with the statements she made on the topic of abortion in her deposition. Depo. of Salzer, Rec. Doc. 61-7, at 9-11.

In her statement of material facts, Ms. Ducharme contests defendants' assertion that Ms. Salzer does not disapprove of abortion by citing three purported facts: 1) Ms. Salzer fired two people, within a week of each other, on the day of their abortion procedure. 2) Ms. Salzer's entire affect changed upon learning Ms. Ducharme was to have an abortion. 3) Ms. Salzer told Ms. Ducharme on the day of the abortion that she was fired.  Pl.'s Statement of Material Facts, Rec. Doc. 68-1, at 5-6.  The court addresses each in turn:

*1.  Ms. Salzer fired two people, within a week of each other, on the day of their abortion procedure.*

As discussed above, the allegation that there was a second employee similarly situated is erroneous because it is undisputed that Ms. Salzer did not know that this second person was pregnant at the time of her termination. The other person is Ms. Ducharme, plaintiff in this case. However, while such temporal proximity might be evidence supporting a claim of pretext, it is insufficient on its own to establish pretext. Fairchild, 815 F.3d at 968. In Fairchild, the Fifth Circuit held that, just like in other Title VII cases, "suspicious timing may be evidence of pretext," but "'[t]iming standing alone is not sufficient absent other evidence.'" Id.  (quoting Boyd v. State Farm Ins. Companies, 158 F.3d 326, 330 (5th Cir. 1998) (alteration in original)).  Thus, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that [pregnancy discrimination] was the real motive."  Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th

Cir. 1997). In <u>Fairchild</u>, the Fifth Circuit reasoned that allowing "a plaintiff to prove pretext based solely on temporal proximity 'would unnecessarily tie the hands of employers' after . . . the protected status is disclosed." 815 F.3d at 968 (quoting <u>Strong v. Univ. Healthcare Sys., L.L.C.</u>, 482 F.3d 802, 808 (5th Cir. 2007)). Thus, the Fifth Circuit in Fairchild held the employer was entitled to judgment as a matter of law because the employer had established a legitimate, non-discriminatory reason for termination and the only circumstantial evidence of pretext was temporal proximity. <u>Id.</u> Similarly here, while the fact that Ms. Ducharme was told she was being terminated from employment on the same day she underwent an abortion could support a finding of pretext, that fact alone cannot show that Ms. Salzer or CCDV were motivated by abortion discrimination.


2. *Ms. Salzer's entire affect changed upon learning Ms. Ducharme was to have an abortion*.

As support for this, Ms. Ducharme claims Ms. Salzer changed her mind about giving Ms. Ducharme a ride; changed her attitude, by starting to treat Ms. Ducharme crappily and indifferently, avoiding Ms. Ducharme, and talking to her not very nicely. Pl.'s Statement of Material Facts, Rec. Doc. 68-1, at 5-6.

First, Ms. Ducharme cites her own testimony that Ms. Salzer changed her mind about giving Ms. Ducharme a ride to the procedure. Ducharme Depo., Rec. Doc. 61-9, at 77. But, Ms. Salzer explains she was unable to drive Ms. Ducharme to the procedure itself because Ms. Ducharme wanted a ride during Ms. Salzer's work hours, and Ms. Salzer only gives employees rides on her own way home from work. Ms. Ducharme does not refute that Ms. Salzer was working at the time. Furthermore, it appears from Ms. Salzer's Declaration that she drove Ms. Ducharme to her initial consultation for the procedure.

> Nicole asked me for a ride to the abortion clinic for her initial appointment. It was at the end of the day, and I agreed to give her a ride. When I leave for the day, I

sometimes give employees rides home, if they ask, when it is not far out of my way. I do not give rides to everyone who asks. Nicole later asked me for a ride to the clinic for the actual procedure. I could not give her a ride because it was during my regular work hours. **My decision not to give her a ride on this second trip had nothing to do with abortion.**

Salzer Decl., Rec. Doc. 61-3, at 4, ¶25-27 (emphasis added). Particularly if Ms. Salzer had driven Ms. Ducharme to the abortion clinic for the initial appointment, it is hard to imagine why she would renege on the second appointment, for the procedure itself, because she now had some anti-abortion animus. The court also notes it is uncontested that when Ms. Ducharme presented her issue and asked for time off to have the abortion, Ms. Salzer adjusted the schedule to give her the time off to have the procedure. Id. at ¶19. Ms. Salzer did not attempt to talk her out of the decision or say that she disapproved of it. Pl. Statement of Materials Facts, Rec. Doc. 68-1, at 6.

Next, Ms. Ducharme cites her own deposition testimony that Ms. Salzer began treating her "crappily" and "indifferently" and started avoiding Ms. Ducharme. Ducharme Depo., Rec. Doc. 61-9, at 77. Ms. Ducharme's testimony that Ms. Salzer began treating her "crappily" is not supported by any examples of a change in how she was treated, other than changing her mind about giving Ms. Ducharme a ride, already discussed above.

3. *Ms. Salzer told Ms. Ducharme on the day of the abortion that Ms. Ducharme was fired.*

This is the same temporal proximity claim made in Ms. Ducharme's point 1.

The three purported facts cited by Ms. Ducharme are insufficient to create a disputed fact. There is no evidence to show that Ms. Salzer disapproves of abortion. To the contrary, the only evidence on this issue is Ms. Salzer's statement that she has no opinion on abortion.

Finally, the court addresses Ms. O'Morrow's declaration, which Ms. Ducharme also cites in support of her pretext argument. Ms. O'Morrow's declaration that she "knew" Ms. Ducharme was not fired for drinking on the job is not competent evidence. Ms. O'Morrow was another employee that does not appear to have any human resources or other managerial authority, and she does not indicate in her declaration what basis she has for her belief other than her own suspicions.

Thus, there is no proof to support any of plaintiff's claims that Ms. Salzer had an anti-abortion animus. Even viewed in the light most favorable to Ms. Ducharme, she has not offered sufficient evidence to create a genuine issue of fact that CCDV's proffered reason for terminating her was a pretext for pregnancy discrimination. She supports her claim that Ms. Salzer was motivated by an anti-abortion animus with nothing more than a subjective belief. A plaintiff's subjective beliefs are not sufficient to create an issue of fact. See Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144,153 (5th Cir. 1995). In the end, plaintiff has nothing but temporal proximity, and as a matter of law, while temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence—without more—is insufficient. Fairchild, 815 F.3d at 968. Accordingly, CCDV is entitled to summary judgment on Ms. Ducharme's pregnancy discrimination claims under Title VII and the LPDA[9] for both failing to state a prima facie case and failing to show CCDV's legitimate, nondiscriminatory business reasons were a pretext for pregnancy/abortion discrimination.

## Conclusion

For the foregoing reasons, CCDV's Motion for Judgment on the Pleadings (Rec. Doc. 62) is DENIED in part and DENIED as moot in part; and defendants' Motion for Summary Judgment

---

[9] The same McDonnell Douglas framework applies to claims under the LPDA, "and a plaintiff who fails to meet his or her burden under Title VII—or who succeeds in doing so—will simultaneously fail to satisfy—or concurrently demonstrate—the prerequisites set forth in Louisiana law." Martin v. Winn-Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 811 (M.D. La. 2015).

(Rec. Doc. 61) is GRANTED as to Ms. Ducharme's discrimination claims under Title VII and the LPDA and remains under submission as to Ms. Ducharme's FLSA claims.

New Orleans, Louisiana, this 13th day of May, 2019.

Janis van Meerveld
United States Magistrate Judge